CARLSON *v.* E. H. SHELDON & CO.

MASTER AND SERVANT—FURTHER COMPENSATION—EVIDENCE.

Employee, an edgerman in a saw mill, is entitled to further compensation where evidence shows he is still suffering from original injury, finding of department of labor and industry on which denial of compensation is based is without any evidentiary support on matters relevant to employee's inability to work on account of original injury and settlement receipt has never been approved by department.

Appeal from Department of Labor and Industry. Submitted October 4, 1933. (Docket No. 29, Calendar No. 37,196.) Decided December 5, 1933.

August Carlson presented his claim against E. H. Sheldon & Company, employer, and Metals Mutual Insurance Company, insurer, for compensation for accidental injuries received while in defendant's employ. On petition for further compensation. Petition denied. Plaintiff appeals. Reversed, and remanded.

*R. W. Nebel,* for plaintiff.

*Francis D. Campau,* for defendants.

BUTZEL, J. August Carlson, employed as an edgerman by E. H. Sheldon & Company, suffered a compensable injury on October 21, 1929. After receiving compensation for five days under the terms of an approved agreement, he signed a final settlement receipt which was duly filed, but never approved, by the department of labor and industry.

Plaintiff sustained an injury to his right arm through a hard blow from a board thrown out of the edger. After a brief interval, he resumed work for about an hour and a half but eventually found himself unable to continue. The following day he was sent to his employer's physician who, after a week's treatment, sent him back to work with the assurance that there was nothing wrong. Plaintiff's return to work on November 2, 1929, is explained by him as motivated by financial necessity rather than by physical fitness. He continued to work steadily for two weeks, during which time he claims he experienced considerable difficulty, and would have been unable to continue working at his regular employment had not the completion of the cut at the mill compelled its shut down for the time being. At that time, the employer's scaler or bookkeeper looked at his arm and told him to return to the company doctor for further treatment. After two more weeks of treatment, the company physician provided him with some mild medication for his arm and stated that he could do nothing further for him. Plaintiff immediately went to another physician and received about four more treatments. Since that time he has tried various home remedies.

On May 10, 1930, he resumed his position as edgerman and continued until July 15, 1930, when the loss of the tip of a finger on his left hand incapacitated him. He received compensation for this injury. On August 15, 1930, he returned to work again and continued until September, 1930, when the cut was finished. Immediately thereafter, he worked for a short time as a swamper, until laid off, although he claims the strain on his arm would have prevented his continuing at work any longer. Since that time, he has not been employed except for very brief in-

tervals in the fall of 1930, and he alleges that inability to control the movements of his right arm prevents him from doing his regular work.

Plaintiff filed with the department of labor and industry a petition for further compensation and to review payments. He claims that he has been incapacitated since November 2, 1929. After a hearing, a deputy commissioner denied further compensation. The case was reopened for further testimony but the commissioner again denied an award, and, on review, his decision was affirmed by the department. Plaintiff brings an appeal in the nature of certiorari to this court. In the opinion of the department, it is stated that the settlement receipt filed with it was never approved, but nevertheless it affirms the findings of the commissioner and further states that he had the advantage of seeing the witnesses. He also saw the injured arm but is not a physician. The symptoms are largely subjective and cannot be seen from an external and cursory examination of the arm. The opinion of the department states that the question of whether or not plaintiff's disability was the result of the accident of October 21, 1929, must be decided very largely upon the medical testimony.

A review of that testimony shows that he was examined by the company physician and also by two doctors of his own selection. One of them, Dr. T. W. Schultes, examined plaintiff several times prior to the hearing, heard the testimony and had the benefit of examining X-rays taken on the day of the hearing. He stated:

"The X-ray showed a condition at the head of the radius of apparent arthritis, and at the shoulder, near the carotid process, there is an opacity in the plate showing the probability of fibrosis."

He further testified that plaintiff had some anæsthesia in the area of the inner side of the upper arm and on the external surface of the lower part of the arm; that the grip of the right hand was less than that of the left; that there seemed to be a generally weakened condition of the entire arm on the right side, and that plaintiff was not able to do the work of an edgerman. He further testified:

"The blow struck him right in the area of the musculo-cutaneous nerve; this musculo-cutaneous nerve supplies the biceps muscle, the carotid and *brachialis anticus* and the major muscles that we use in flexing the arm.

"From the history he gave he undoubtedly received such a contusion of the forearm that he developed a condition of the nerve that has more or less paralyzed those muscles, and the result is paralysis from non-use, which developed ankylosis and the fibrosis at the carotid process."

The testimony of another physician largely corroborated that of Dr. Schultes. Both doctors stated, however, that arthritis is not always occasioned by trauma, and that it could cause some of the symptoms complained of.

The deputy commissioner found in the opinion approved by the department that plaintiff was a man 67 years of age, naturally impaired by age and suffering somewhat from rheumatism; that it appeared that work in his line was not to be had, that common labor jobs were going to younger men, and that when there was employment he worked, earned full wages and gave a full day's work; and that now, for reasons for which none of the parties are to blame, he is out of work.

We do not believe that there is any evidence to sustain this finding, except perhaps the fact that

there is no work to be had, but this does not affect the issue as to plaintiff's inability to do work on account of his injury. It was shown that the defendant employer operated his mill in 1931, but that plaintiff was not employed; that on the occasions when he did work following his injury, he met considerable difficulty because of the disability to his right arm. A careful reading of the testimony leads to only one rational and natural inference, that the plaintiff is still suffering from the original injury.

On the taking of further testimony by the deputy commissioner, defendants offered the company doctor as a witness. Plaintiff objected, unless they were also given the opportunity to produce more medical testimony. The commissioner refused to hear any further medical testimony. No objection was made to this ruling by defendants and no other doctors were called.

We do not believe that there is any testimony showing that plaintiff is no longer incapacitated as a result of his original injury. The case is an exceedingly close one but plaintiff has shown that he is still suffering from his original injury, and therefore entitled to an adjustment of compensation, and further compensation as asked for by him, while defendants have not shown any facts to the contrary. The order should be reversed, with costs to plaintiff, and the case remanded to the department of labor and industry for further proceedings.

McDonald, C. J., and Weadock, Potter, Sharpe, North, Fead, and Wiest, JJ., concurred.