BURROUGHS CORPORATION *v.* CITY OF DETROIT

BURROUGHS CORPORATION *v.* WAYNE COUNTY

1. TAXATION—PROPERY TAXES—CITY AND COUNTY TAXES—FEDERAL GOVERNMENT.

Property owned by the federal government is exempt from city and county property taxes.

---

REFERENCES FOR POINTS IN HEADNOTES

[1, 4] 51 Am Jur, Taxation § 218.
[2, 3] 41 Am Jur, Pleading §§ 340–343.
[5] 20 Am Jur 2d, Courts § 226.
[6] 38 Am Jur, Municipal Corporations § 385.
[7] 51 Am Jur, Taxation § 420.

2. CONTRACTS—INTERPRETATION—SUMMARY JUDGMENT.

  Questions of contract interpretation are legal in nature, and therefore, absent any offer of proof giving rise to issues of fact, may properly be disposed of by summary judgment.

3. PLEADING—SUMMARY JUDGMENT—AFFIDAVIT—QUESTION OF FACT.

  An affidavit opposing a motion for summary judgment must offer more than the conclusion of the affiant that a question of fact exists; it must be made on personal knowledge and must set forth with particularity such facts as would be admissible as evidence to establish or deny the grounds stated in the motion (GCR 1963, 116.4).

4. TAXATION — PROPERTY TAXES — FEDERAL GOVERNMENT — POSSESSION — CONTRACTS.

  Finding that certain tools and inventory in possession of plaintiff corporation were owned by the federal government and hence not taxable *held*, proper where relevant government contracts when read in their entirety indicate federal government ownership, the federal government maintains constant surveillance over the property and the services being performed, all property in question was identified and segregated, and government administrative officers and inspectors were permanently located at plaintiff's plants to supervise relevant activities.

5. TAXATION — PROPERTY TAXES — FEDERAL GOVERNMENT — FEDERAL QUESTION — CONTRACTS.

  The construction and interpretation of federal government defense contracts and the determination of whether their provisions are sufficient to vest absolute title or ownership of property connected with the contracts in the federal government, although in possession of a contractor, so as to make the property untaxable, is a matter of federal law.

6. TAXATION — PROPERTY TAX — MUNICIPAL CORPORATIONS — CITY CHARTER — TAXING POWER.

  A city charter cannot confer upon the city taxing powers beyond those authorized by constitution and statute.

7. TAXATION—PROPERTY TAXES—INTEREST IN PROPERTY—GENERAL PROPERTY TAX ACT.

  The Michigan general property tax act as it existed in 1959 authorized cities and counties to collect only an ordinary *ad valorem* tax on tangible personal property and did not allow for the taxation of intangible interests in such property (MCLA § 211.1 *et seq.*).

Appeal from Wayne, Edward S. Piggins, J. Submitted Division 1 January 10, 1969, at Detroit. (Docket Nos. 4,245, 4,246, 4,247, 4,248, 4,249.) Decided August 26, 1969.

Declaration by Burroughs Corporation, a Michigan corporation, against the City of Detroit, a municipal corporation, to recover sums paid under protest for tax assessed against it as user of personal property belonging to the Federal Government. A similar action was brought against Wayne County. Causes consolidated in circuit court and also on appeal. Summary judgments for plaintiff. Defendants appeal. Affirmed.

*Butzel, Eaman, Long, Gust & Kennedy* (*Philip T. Van Zile II* and *Lawrence R. Van Til,* of counsel), for plaintiff.

*William L. Cahalan,* Prosecuting Attorney, and *Aloysius J. Suchy* and *William F. Koney,* Assistant Prosecuting Attorneys, for defendant Wayne County.

*Robert Reese,* Corporation Counsel, and *Julius C. Pliskow* and *Arthur Yim,* Assistants Corporation Counsel, for defendant City of Detroit.

Before: Lesinski, C. J., and J. H. Gillis and T. M. Burns, JJ.

J. H. Gillis, J. Five actions were brought by plaintiff to recover 1960 personal property taxes paid defendants under protest. They were consolidated for disposition in the trial court and remain consolidated on appeal.

The personal property in question consisted of machinery, equipment, tools and inventory in plaintiff's possession on tax day, December 31, 1959. It was used by plaintiff, as a defense contractor, in making goods and performing services for the federal government. Tax liability was imposed on plaintiff "as the person in possession subject to the prior right of the Federal Government." Plaintiff's protest was based on its contention that the personal property was owned by the federal government and was therefore tax exempt.

In answer to plaintiff's complaint, defendants admitted government ownership of the *machinery and equipment.* In light of the holding in *General Motors Corporation* v. *City of Detroit* (1964), 372 Mich 234, partial summary judgments in plaintiff's favor were entered, without objection, ordering refunds of the personal property taxes paid by plaintiff on the *machinery and equipment.* Thereafter a refund of the taxes paid on the remaining *tools and inventory* was also ordered by summary judgment. It is solely from the latter disposition that defendants appeal.

Plaintiff's motion for summary judgment on the *tools and inventory* was premised on the alleged absence of any genuine issue of material fact. Defendants objected to the motion, alleging issues of material fact as to whether the tools and inventory were government-owned. While conceding the exempt status of tools furnished directly to plaintiff by the government, defendants denied government ownership of certain tools purchased from independent tool manufacturers or built by plaintiff in its tool shop. In support thereof, defendants submitted an "affidavit of merits" by Omer Du Chene, head accountant in the personal property division of the Board of Assessors of the City of

Detroit.   In the affidavit, Mr. Du Chene averred
"[t]hat on the basis of the course of conduct of the
plaintiff and the Government, there were dealings
with this personal property which was inconsistent
with the claim of absolute title in the Government."
To illustrate the course of conduct, however, the af-
fiant merely set forth certain provisions of some of
the defense contracts relating to risk of loss, rever-
sion of title, unrestricted control of scrap, right to
acquire or dispose of property and insurable inter-
est.   From these the affiant concluded "that it is a
material issue of fact whether the remaining tooling
purchased from tool manufacturers or built in plain-
tiff's tool shop and the inventory of materials, sup-
plies and parts were owned by the Government on
December 31, 1959."   As pointed out in plaintiff's
brief, however, "The contract provisions are not dis-
puted.   Only their interpretation and effect on the
issue of ownership are in question."

After pointing out defendant's failure to raise
any genuine issue of material fact regarding the
ownership of the machinery and equipment, the trial
court concluded that defendant's concession with
respect to the exempt status of such property must
necessarily have been based on their legal inter-
pretation of the title-vesting provisions of the de-
fense contracts between plaintiff and the federal
government.   The trial court stated further:

. "It is enigmatic to this court why they concede
that the contractual provisions alone governed the
disposition of the question of the machinery and
equipment ownership, yet they deny now that the
same contractual provisions govern the question of
ownership of the remaining items of tangible per-
sonal property.   It is also of some importance to note
that in simply denying plaintiff's remaining allega-
tions relative to the other personal property claimed

by plaintiff to be government-owned, the defendants fail to set forth in substance the matters on which they rely to support such denials. Neither do they plead lack of knowledge or information sufficient to form a belief as to the truth of the averments. (See GCR 1963, 111.4 and 111.5.) It is likewise important to note that defendants in over six years have made no effort to depose any witness on this issue and have rejected both plaintiff's offer to co-operate and the court's willingness to afford them this opportunity."

As for the allegation of a meritorious question of fact contained in defendants' affidavit of merits, the trial court viewed it as a mere conclusion of the affiant, framed around a legal interpretation of the title-vesting provisions of the defense contracts. Similarly, defendants' denial of plaintiff's allegation of government ownership was deemed to be nothing more than a conclusion derived from their interpretation of the title-vesting provisions of the defense contracts. Therefore, the trial court concluded, "Analyzing this case as cautiously as possible, the only issue to be finally determined is a legal one— the construction of the defense contracts. It is the opinion of this court that the propriety of plaintiffs' motion for a summary judgment is well-founded."

Defendants contend that the trial court overlooked the contested issue of ownership of the tools and inventory and failed to observe the distinction between machinery and equipment on the one hand and tooling and inventory on the other. Defendants maintain that their failure to object to the entry of partial summary judgments with respect to the machinery and equipment was prompted by *General Motors, supra,* which held in favor of the complaining taxpayer with respect to machinery and equipment *admittedly* owned by the government. There, according to defendants, is the distinction. They

contrast *General Motors,* wherein the ownership of the machinery and equipment was allegedly not in issue, with the present case, wherein they allege that the central issue is whether the federal government was the owner of the tools and inventory. They conclude, therefore, that "There was no basis for comparing [defendants'] position with respect to tooling and inventory with an assumed concession in the case of machinery and equipment."

What we are faced with, therefore, is a syllogism. Defendants contend that they acceded to the entry of partial summary judgments as to machinery and equipment because of the holding in *General Motors, supra.* The major premise, therefore, is the holding in that case, *i.e.,* all government-owned machinery and equipment are exempt from personal property taxation. Based on the major premise, defendants concluded that the machinery and equipment in this case was tax exempt.

A silent minor premise must, therefore, have intervened between the major premise and the conclusion; *i.e.,* that the machinery and equipment was government-owned. Focusing on this silent minor premise, the next relevant inquiry is into the manner in which defendants reached the conclusion that the machinery and equipment was government-owned. In response to this question, the trial court stated, "It is of particular significance to also point out the defendants' concessions in this area must necessarily have been based solely on their legal interpretation of the contractual provisions." They raised no issue as to any question of fact.

This conclusion by the trial court recognized that the determination of ownership of the personal property being used by plaintiff in performance of its defense contracts was provided for in the contracts themselves. Absent any offer of proof giving rise to

issues of fact, questions of contracts interpretation, being legal in nature, could properly be disposed of by summary judgment.

The same reasoning was applied to the question of ownership of the remaining tools and inventory. Again, defendants offered no proof giving rise to any issues of material fact. Their affidavit of merits opposing plaintiff's motion for summary judgment proffered no more than the conclusion of the affiant that a question of fact existed. "Such responses cannot be said to fall within GCR 1963, 116.4, governing the content of affidavits and its requirement that 'supporting and opposing affidavits shall be made on personal knowledge and *shall set forth with particularity* such facts as would be admissible as evidence to establish or deny the grounds stated in the pleading or motion.' (Emphasis supplied)."

*Dionne* v. *Pierson Contracting Company* (1965), 2 Mich App 134, 138. The trial court was correct in ruling that defendants' general denials, supported solely by the affidavit of merits, were insufficient to bar the entry of summary judgment. GCR 1963, 117.3; *Dionne* v. *Pierson Contracting Company, supra.* Looking next to the title-vesting provisions of the various defense contracts,[1] the trial court ruled

---

[1] The contracts were of three types: Fixed Price Progress Payment Contracts (FPPP); Cost Plus Fixed Fee Contracts (CPFF) and Facilities Contracts. The relevant provisions of the respective contracts are as follows:

*FPPP Contract*

"(d) *Title*

"When any progress payment is made under this contract, title to all parts; materials; inventories; work in process; special tooling * * * ; non-durable * * * tools, jigs, dies, fixtures, molds, patterns, taps, gauges, test equipment and other similar manufacturing aids * * * ; theretofore acquired or produced by the Contractor * * * shall forthwith vest in the Government; and title to all like property thereafter acquired or produced by the Contractor * * * shall forthwith vest in the Government upon said acquisition, production or allocation."

*CPFF Contract*

"(b) Title to all property furnished by the Government shall remain in the Government. Title to all property purchased by the

that "[e]ach one of these provisions when read in their entirety * * * clearly indicates that the ownership of the machinery, equipment, tooling and inventory and all other facilities needed by plaintiff to carry out the provisions of the contract originally vested in and continually remained at all times in the United States Government." As for defendant's contention in its affidavit of merits that certain other contract provisions were inconsistent with government ownership, the trial court stated that "[w]hen these provisions are read in the context of the remaining provisions of the contract, it is impossible for this court to agree. Standing alone they could just as well be provisions of any contract of bailment or lease which would in no way affect or constitute incidents of ownership."

In addition, the trial court pointed out that "the government maintained constant surveillance over its property and the services being performed. All government property was identified and segregated. The government administrative contracting officer maintained offices at Burroughs; resident inspectors and staff were permanently located at one of Burroughs' plants as were resident auditors and

---

Contractor, for the cost of which the Contractor is entitled to be reimbursed * * * shall pass to and vest in the Government upon delivery of such property by the vendor. Title to other property, the cost of which is reimbursable to the Contractor under this contract, shall pass to and vest in the Government upon (i) issuance for use of such property in the performance of this contract, or (ii) commencement of processing or use of such property in the performance of this contract, or (iii) reimbursement of the cost thereof by the Government * * * whichever first occurs."

*Facilities Contract*

"3. Title to all property purchased by the Contractor for resale to the Government, for the cost of which the Contractor is entitled to be reimbursed * * * shall pass to and vest in the Government upon delivery of such property by the vendor. Title to all property manufactured by the Contractor, for sale to the Government, for the cost of which the Contractor is entitled to be reimbursed * * * shall pass to and vest in the Government upon delivery of such property by the Contractor. Title to all property furnished by the Government shall remain in the Government."

staff, together with a resident property officer and technical representative."

· The trial court thus concluded that the tooling and inventory taxed by defendants "was the property of the United States Government and that the United States Government and not the plaintiff was the real owner thereof."

The trial court's ruling was clearly correct. The construction and interpretation of defense contracts and the determination whether their provisions are sufficient to vest absolute title or ownership in the federal government is a matter of federal law. *United States* v. *County of Allegheny* (1944), 322 US 174 (64 S Ct 908, 88 L Ed 1209). Title-vesting provisions in defense contracts of the type with which we are concerned were interpreted in *United States* v. *County of Allegheny, supra,* and *United States* v. *Ansonia Brass and Copper Co.* (1910), 218 US 452 (31 S Ct 49, 54 L Ed 1107). These cases held that title to work in progress and tooling in the possession of the contractor legally vested in the government and that this title was absolute and not a lien or security interest.

Notwithstanding government ownership of the tooling and inventory, defendants further contend that the taxes were properly levied for two reasons; (1), that the incidence of the tax as applied fell on plaintiff as "beneficial" owner and not on the government and (2), that no governmental immunity was violated because the taxes imposed did not retard, impede, burden or interfere in any way with the properties, agencies or instrumentalities of the government.

Defendants' authority to levy these taxes was based on the general property tax act[2] and title 6,

---

[2] MCLA § 211.1 *et seq.* (Stat Ann 1960 Rev § 7.1 *et seq.*), implementing Const 1908, art 10, § 3 (now repealed).

ch 2, § 7 of the charter of Detroit. However, the Detroit city charter "does not and could not confer taxing powers beyond those authorized by constitution and statute." *General Motors, supra,* at 238.

In *City of Detroit* v. *Murray Corporation of America* (1958), 355 US 489 (78 S Ct 458, 2 L Ed 441), *reh den* 357 US 913 (78 S Ct 1145, 2 L Ed 2d 1164), the Supreme Court of the United States held that the general property tax act authorized a tax upon the right to use another's tax-exempt personal property. This construction was rejected, however, by the Michigan Supreme Court in *Continental Motors Corporation* v. *Township of Muskegon* (1961), 265 Mich 191, 194, 195:

"Ours is the primary duty to construe acts of the Michigan legislature, to determine the extent and the scope of their application. When a State court of last resort authoritatively construes a State statute, Federal courts, including the supreme court, are bound by that construction. \* \* \* We are unable to adopt the supreme court's construction in *Murray* of our general property tax act as it then related to *personal* property because there was then no specific statutory authorization for imposition of a tax upon the right to use another's tax exempt *personal* property \* \* \* ."

The rejection of *Murray* in *Continental* was reiterated in *General Motors.* While *Murray* does establish that a tax could validly be levied on the privilege of using or possessing government property, it was made clear in the second *Continental* case (*Continental Motors Corporation* v. *Township of Muskegon* [1965], 376 Mich 170), that additional appropriate legislation would be required.

Defendant's contention that the tax should be upheld as a tax upon plaintiff's "beneficial ownership" of the tooling and inventory is without merit. "We

reject the contention  *  *  *  on the ground that our law, before the 1959 amendment, authorized only an ordinary *ad valorem* tax on tangible personal property without providing for the taxation of intangible interests in such property." *Continental, supra,* 365 Mich 191, 200.

"Defendants' discussions of where the legal incidence, as distinguished from economic burden, of the tax falls, and whether it represents an assessment *in personam* or *in rem,* while of possible value in a consideration of the question of implied constitutional immunity from State taxation of the Federal government, its agencies and property, are not decisive of the applicability of *Continental.*  *  *  *

"This Court held therein (p 199) that  *  *  * 'our law authorized only in *ad valorem* tax on the personal property itself without providing for taxation of possessory interests.' If the tax is on a possessory interest, it is invalid under *Continental.*

"On the other hand, if, as defendants urge, the tax is on the entire interest in the personal property, it is a tax on personal property of the United States, which is immune therefrom." *General Motors, supra,* pp 237, 238.

In conclusion, we concur in plaintiff's characterization that "we are involved in nothing more than the relitigation of matters long since decided adversely to appellants."

Affirmed. No costs, a public question being involved.

All concurred.