WYNGLASS v PRUDENTIAL LIFE INSURANCE COMPANY OF
AMERICA

1. JUDGMENT—SUMMARY JUDGMENT—BENEFIT OF DOUBT—GENUINE
ISSUE OF FACT—COURT RULES
A summary judgment granted for the reason that there is no
genuine issue as to any material fact will be upheld on appeal
where, giving the opposing party the benefit of every reasona-
ble doubt, there is no genuine issue as to any material fact
(GCR 1963, 117.2[3]).

2. INSURANCE—ACCIDENTIAL DEATH—EYES OF DECEASED—SELF-DE-
FENSE—PROVOCATION BY INSURED—MISCONDUCT.
A court, in determining that the death of an insured was acciden-
tal within the meaning of an accidental death clause must find
that the death (1) was not caused by one acting in self-defense,
and (2) was not culpably provoked by the insured nor the result
of his misconduct; a death is not accidental as a matter of law
where it is a foreseeable occurrence wʰᵉn viewed through the
eyes of the deceased.

Appeal from Wayne, Thomas J. Foley, J. Sub-
mitted March 4, 1976, at Detroit. (Docket No.
24560.) Decided April 6, 1976.

Complaint by Sherry Lynn Wynglass, by her
next friend Cheryl Wynglass, against the Pruden-
tial Life Insurance Company of America and De-
bra Wynglass for accidental death benefits payable
under a policy of insurance. Cross-claim by Debra
Wynglass against Prudential Life. By stipulation
Sherry Lynn Wynglass was dismissed as a party.
Summary judgment for defendant Prudential Life.
Cross-plaintiff appeals. Affirmed.

REFERENCES FOR POINTS IN HEADNOTES
[1] 73 Am Jur 2d, Summary Judgment § 4 *et seq.*
[2] 44 Am Jur 2d, Insurance § 1219 *et seq.*

*Charfoos & Charfoos, P. C.* (by *David W. Christensen),* for Debra Wynglass.

*Dickinson, Wright, McKean, Cudlip & Moon* (by *Michael Vartanian),* for Prudential Life.

Before: D. E. HOLBROOK, JR., P. J., and MC-GREGOR and N. J. KAUFMAN, JJ.

PER CURIAM. Plaintiff, Debra Wynglass, appeals the grant of defendant's motion for summary judgment, GCR 1963, 117.2(3), by the Wayne County Circuit Court.[1]

The issue in dispute involves a policy of insurance under which Raynel Wynglass was the named insured and Debra Wynglass was the named beneficiary. On Raynel's death, defendant paid the face value of the policy. Plaintiff Debra brought this action to collect the additional "accidental death" benefits under the insurance policy.

A deposition by Debra Wynglass was the only evidence before the trial court at the time it considered the motion for summary judgment. The deposition reveals that Debra shot and killed Raynel in attempting to fend off one of his numerous assaults on her. She had lived with Raynel, who stood six feet tall and weighed about 280 pounds, for three and one-half years. On the night of March 19, 1974, she arrived home from work about 5:30 p.m. Raynel accused her of having an affair with another man. She went into the bedroom and Raynel struck her with his fist while yelling at her. After leaving the bedroom, she went to the kitchen and grabbed a paring knife.

---

[1] This suit was originally brought by Sherry Lynn Wynglass against the insurance company and Debra Wynglass. Debra then filed a cross-claim against Prudential Life. By stipulation, the original plaintiff was dismissed from the litigation. For convenience, we deem Debra Wynglass as plaintiff and Prudential Life as defendant.

Raynel saw the knife, they struggled. He broke her knife. Raynel grabbed a long bread knife and began "cutting" her. After receiving many cuts, she broke away and ran to the bedroom. After knocking her down and kicking her, he went into the bathroom.

Debra then ran into the bedroom and grabbed a pistol which had, on a prior occasion, been left in the house by a third party. Both Debra and Raynel were aware of the gun. She ran into the hallway in order to leave, but Raynel was there. He grabbed her purse and threw it, and began knocking her up against the wall. He had the knife, and she had the gun. As Raynel approached her, she said something to the effect of "don't come any closer or I will shoot". She was pointing the gun at him, and he saw it. Debra stated that because he kept coming toward her she shot him. She testified that Raynel had assaulted her many times before, but never with a weapon. She had never resisted before. Debra stated that she was afraid that he would kill her, and that he had never made such a threat before. The case was ruled "justifiable homicide" by the police.

For a summary judgment granted under GCR 1963, 117.2(3) to be upheld on appeal, it must be clear that, giving the opposing party the benefit of every reasonable doubt, there is no genuine issue as to any material fact. *George E Snyder Associates, Inc v The Midwest Bank,* 56 Mich App 193; 223 NW2d 632 (1974), *lv den,* 393 Mich 769 (1974).

The court here, therefore, held that the death of the insured was not, as a matter of law, accidental. In determining whether a death is accidental, a court must view the death through the eyes of the deceased and must ascertain whether his death was a foreseeable occurence. *State Farm Mutual*

*Automobile Insurance Co v Coon,* 46 Mich App 503; 208 NW2d 532 (1973). Plaintiff argues that the instant facts made the question of foreseeability one for jury determination. In a similar case, the Supreme Court has held that, for a death to be considered accidental, the court must find that:

"(1) it was not done in self-defense, (2) that it was not culpably provoked by insured nor the result of his misconduct". *Reed v Mutual Benefit Health and Accident Association,* 345 Mich 586, 591; 76 NW2d 869 (1956).

Based on the *Reed* test and on *Peterson v Aetna Life Insurance Co,* 292 Mich 531; 290 NW 896 (1940), we hold that the trial court was correct in finding that, as a matter of law, the insured's death was not accidental. Plaintiff in *Peterson* was assignee of the named beneficiary of a policy insuring the life of one Floyd Peterson. Peterson was dating a Mrs. Gee. One day he came to the Gee household in a drunk and belligerent mood. He began yelling at Mrs. Gee, pulled a gun and threatened to kill her and her family. Peterson forced her to sit in a chair while he trained the gun on her. According to Mrs. Gee, he raised the gun and took aim at her. At this time her son, Foster, who was aware of the situation, entered the room, and shot Peterson dead.

The Court upheld the trial court's holding of no cause of action. The Court held that one assaulting another with a dangerous weapon should reasonably expect the victim or a third party to resist. As such, if the aggressor is killed, it is a natural and logical sequence of his own voluntary act. Specifically, the Court stated:

"In the instant case, Peterson threatened to kill Mrs.

Gee and her family. He held a gun in his hand, pointed at her, and shouted his threats loud enough to be heard in the street. Peterson must be held, *as a matter of law,* to have expected someone to come to the rescue of Mrs. Gee and to protect her life to the extent of taking his if necessary." 292 Mich at 536. (Emphasis supplied.)

The instant case is even stronger than *Peterson.* In both, the insured was the aggressor. In both, the insured provoked actions resulting in his death. In the instant case, unlike *Peterson,* the decedent saw the gun and was warned by plaintiff that she would use it. As such, the death of the insured was, as a matter of law, foreseeable by him and, therefore, not accidental.

Affirmed. Costs to defendant.