BOB v HOLMES

1. JUDGMENT—SUMMARY JUDGMENT—FAILURE TO STATE DEFENSE—
   PLEADINGS—MATTERS OF LAW—FACTUAL DEVELOPMENTS—
   RIGHT OF RECOVERY.

   A plaintiff's motion for summary judgment for failure to state a
   valid defense tests the legal sufficiency of the pleaded defense
   and is tested by reference to the pleadings alone; all of the
   defendant's well-pleaded allegations must be accepted as true,
   and the motion should not be granted where the defendant's
   defenses are not so clearly untenable as a matter of law that no
   factual development could possibly deny plaintiff's right to
   recovery (GCR 1963, 117.2[2]).

2. JUDGMENT—SUMMARY JUDGMENT—GENUINE ISSUES OF FACT—AFFI-
   DAVITS—PLEADINGS—DOCUMENTARY EVIDENCE—REASONABLE
   DOUBTS—FACTUAL SUPPORT.

   Affidavits, pleadings, depositions, admissions and other documen-
   tary evidence must be considered by a court when considering a
   motion for summary judgment for failure to state a genuine
   issue of material fact, and the benefit of every reasonable doubt
   must be given to the party opposing the motion; this motion
   tests whether factual support exists for the claim made (GCR
   1963, 117.2[3]).

3. JUDGMENT—SUMMARY JUDGMENT—GENUINE ISSUES OF FACT—BUR-
   DEN OF PROOF.

   A party opposing a motion for summary judgment for failure to
   establish the existence of a genuine issue of material fact bears
   the burden of coming forward with some proof to establish the
   existence of a genuine issue of material fact (GCR 1963,
   117.2[3]).

REFERENCES FOR POINTS IN HEADNOTES
[1–3] 61 Am Jur 2d, Pleading § 229 et seq.
[4] 61 Am Jur 2d, Pleading § 394 et seq.
[5] 61 Am Jur 2d, Pleading § 280.
[6] 17 Am Jur 2d, Contracts § 191.
[7] 17 Am Jur 2d, Contracts § 192.
[8] 45 Am Jur 2d, Interest and Usury §§ 262–269.
   Statute denying defense of usury to corporation. 63 ALR2d 924.

4. JUDGMENT—SUMMARY JUDGMENT—AFFIDAVITS—DEFECTS—PRE-
     SERVING QUESTION.

   Defects in affidavits opposing a motion for summary judgment are
     waived if not objected to at the trial level.

5. CONTRACTS—PLEADINGS—ENFORCEABILITY OF CONTRACTS—EXTRIN-
     SIC EVIDENCE—GENUINE ISSUES OF FACT.

   Pleadings which challenge the enforceability or allege modifica-
     tion of a contract and rely on extrinsic evidence state a genuine
     issue of material fact.

6. CONTRACTS—EVIDENCE—PAROL EVIDENCE—ADMISSIBILITY.

   Parol evidence is admissible to prove allegations of fraud, duress
     or sham in the creation of a contract.

7. CONTRACTS—UNCONSCIONABILITY—FACTORS.

   The commercial setting, purpose and effect of a contractual
     provision determine whether that provision is substantially
     unreasonable or unconscionable; a hearing on these issues is
     required before summary judgment may be granted where
     unconscionability is asserted (MCLA 440.2302; MSA 19.2302).

8. USURY—CORPORATIONS—DEFENSES.

   The defense of usury is not available to corporations in Michigan.

Appeal from Genesee, John W. Baker, J. Sub-
mitted June 20, 1977, at Detroit. (Docket No.
31071.) Decided September 8, 1977.

Complaint by Frank H. Bob and Sanford D.
Schaefer against Robert Holmes and William
Geyer seeking to recover money due under two
leases. Summary judgment for plaintiffs. Defend-
ants moved for rehearing. Motion denied. Defend-
ants appealed. Appeal denied. Plaintiffs filed for
entry of judgment or injunction. Order relating to
liability and damages entered. Defendants appeal.
Reversed and remanded.

*Dykema, Gossett, Spencer, Goodnow & Trigg* (by
*William H. Merrill),* for plaintiffs.

*August, Thompson, Sherr & Miller, P. C.* (by

*Alan R. Miller* and *Arnold S. Schafer)*, for defendants.

Before: BEASLEY, P. J., and V. J. BRENNAN and J. R. McDONALD,* JJ.

V. J. BRENNAN, J. Defendants appeal from orders of the Genesee County Circuit Court granting plaintiffs' motion for summary judgment, denying defendants' motion for rehearing, and ordering that defendants pay certain sums to plaintiffs.

Plaintiffs originally brought this action in Oakland County on February 14, 1974, seeking to recover monies due under two purported leases for equipment and fixtures. By stipulation and order, venue was changed to Genesee County.

The parties first entered into a business relationship on May 2, 1969. Plaintiffs Bob and Schaefer, on behalf of a corporation to be formed, entered into an agreement with defendants' corporation, B. B. & F., Inc. This agreement provided for a joint venture to construct and operate two Ponderosa Steak House restaurants in Genesee County. Plaintiffs were the exclusive holders of Ponderosa System, Inc., franchise rights in Genesee County. Pursuant to this May 1969 contract each of the parties was to contribute $18,000 to the joint venture. The joint venture was to be continued for a period of two years from the opening of the first Ponderosa restaurant in Flint. After the two-year time period expired, B. B. & F., Inc. could acquire Bob's and Schaefer's interest.

On June 30, 1969, a franchise and real estate agreement was entered into between Ponderosa System, Inc., and its franchisee-lessee, "partnership of B. B. & F., Inc and Ponderosa of Greater

---

* Circuit judge, sitting on the Court of Appeals by assignment.

Detroit, Inc, d/b/a Ponderosa Flint No. 1". This agreement was executed for the franchisee-lessee by Robert Holmes, "vice-president", and Frank H. Bob. This agreement contains a covenant by the franchisee-lessee to purchase, for $55,000, "all of the equipment deemed necessary by Ponderosa to operate a Ponderosa Steak House". A corresponding agreement was executed in August 1969, to deal with Ponderosa of Flint No. 2.

According to defendants, plaintiffs Bob and Schaefer took out two loans, each in the amount of $45,000 plus interest, to finance the purchase of equipment for the two restaurants.

On December 31, 1971, B. B. & F., Inc. exercised its rights under the May 1969 agreement and purchased from Bob, Schaefer, and Ponderosa of Greater Detroit, Inc. all of the latter's interest in Ponderosa No. 1 and Ponderosa No. 2. This agreement stated that buyer assumed all undischarged obligations, including "a certain lease agreement wherein Frank H. Bob and Sanford D. Schaefer are Lessors and the Buyers herein shall be the Lessees and covering restaurant fixtures and equipment of Ponderosa Steak House No. 1 and No. 2". For buyer B. B. & F., Inc., this 1971 contract was executed by William Guyer, its vice-president.

Also on December 31, 1971, the "lease agreements" which form the basis of the present lawsuit were executed. They recited that in consideration of the lessors, Bob and Schaefer, purchasing "all equipment, fixtures, and sundry other items" the lessee, Ponderosa No. 1 in one agreement, and Ponderosa No. 2 in the other, agreed to lease this material for $10,000 plus the greater of $1,000 per month rental or 3% of the gross sales. These leases were to run for eight years, at which time

lessee would have the right to purchase the items "for a fair market value".

Plaintiffs' February 1974 complaint alleged that defendants had, as of approximately November 1973, ceased to make payments arising under the leases. Defendants answer admitted that defendants had ceased to make payments. Defendants stated that Ponderosa Steak House of Flint No. 3, Inc., was unconnected with the lawsuit and should be dismissed as a party defendant. Defendants also denied the existence of any lease agreements, alleging that "no lease has ever existed between the parties and that the purported lease agreements were entered into to provide security to plaintiffs for the tax advantages to be gained by the plaintiffs". Defendants affirmative defenses were usury, unconscionable contract, duress, and fraud.

On November 6, 1974, plaintiffs moved for summary judgment pursuant to GCR 1963, 117.2(2) and 117.2(3). The motion was supported by the affidavit of plaintiff Sanford Schaefer.

Defendants filed an answer to plaintiffs' motion for summary judgment and both parties submitted briefs to the trial court. Accompanying defendants' answer were the affidavits of Robert Holmes, William Geyer, and W. Kent Clarke. After hearing oral arguments on February 24, 1975, and after considering supplemental memoranda filed by the parties, the trial court issued an opinion on April 14, 1975. This opinion states that summary judgment should be granted to the plaintiffs.

Defendants then filed a motion for rehearing. Again, briefs were submitted and oral arguments were had. On December 11, 1975, the trial court issued a second opinion. Pursuant to the April 14 and December 11 opinions, the circuit court signed

an order on February 4, 1976, granting plaintiffs' motion for summary judgment and denying defendants' motion for rehearing.

Defendants then filed their claim of appeal on February 24, 1976. However, this Court found that the order appealed was not a final order and dismissed the appeal on December 14, 1976. Plaintiffs then filed a motion for entry of a judgment or injunction. The trial court issued an opinion and order relating to liability and damages. Claim of appeal from the order of October 29, 1976, was filed November 22, 1976. Defendants appeal as of right under GCR 1963, 806.1.

On appeal, defendants bring four allegations of error. We will discuss them in the order presented.

Defendants allege first that the trial court erred in granting plaintiffs' motion for summary judgment pursuant to GCR 1963, 117.2(2) and 117.2(3) where defendants claimed and sought to prove by parol evidence fraud in the inducement, moral duress or business compulsion, and that the purported lease agreements were a sham, not intended to have legal effect.

Although plaintiffs' motion for summary judgment was based on both GCR 1963, 117.2(2), failure to state a valid defense, and 117.2(3), no genuine issue of material fact, the trial court's opinion did not specify which subrule was being utilized, or delineate the method of analysis if both rules were being utilized. We will in any case analyze the propriety of the court's ruling under both provisions.

A motion for summary judgment granted on the failure to state a valid defense tests the legal sufficiency of the pleaded defense. Such motion is tested by reference to the pleadings alone. *Durant v Stahlin,* 375 Mich 628, 644; 135 NW2d 392

(1965), *Todd v Biglow,* 51 Mich App 346, 349; 214
NW2d 733 (1974), *lev den,* 391 Mich 816 (1974). All
well-pleaded allegations must be accepted as true.
*Minor-Dietiker v Mary Jane Stores of Michigan,
Inc,* 2 Mich App 585, 588; 141 NW2d 342 (1966).
Drawing from the standard used for failure to
state a claim, we believe the proper test for such a
motion would be whether defendants' defenses are
so clearly untenable as a matter of law that no
factual development could possibly deny plaintiffs'
right to recovery. *Crowther v Ross Chemical &
Mfg Co,* 42 Mich App 426, 431; 202 NW2d 577
(1972).

On review of the record, we believe that possible
defenses offered by defendants should have pre-
cluded the granting of summary judgment pursu-
ant to subrule 117.2(2). Sufficient basis for denial
of the motion was made in defendants' answer by
their allegations regarding duress, fraud, uncon-
scionable contract, and contract intended to have
no legal effect. Were defendants to prove one or
more of these claims at trial, plaintiffs would be
denied recovery on the leases. In this regard, see
Bashara, *The Elusive Summary Judgment Rule,*
1976 Det Col L Rev 409–410.

However, because the trial court was unclear
whether its decision to grant plaintiffs' motion for
summary judgment was made pursuant to GCR
1963, 117.2(2) or 117.2(3), we will review the pro-
priety of granting summary judgment on the
strength of GCR 1963, 117.2(3).

Motions for summary judgment under GCR
1963, 117.2(3) are not proper unless no genuine
issue as to any material fact remains. In passing
on the motion, benefit of every reasonable doubt
must be given to the party opposing the motion.
Summary judgment under this provision is de-

signed to test whether factual support exists for the claim made. Affidavits, pleadings, depositions, admissions, and other documentary evidence must be considered by the court. Courts are liberal in finding that a genuine issue does exist, in order not to infringe upon a party's right to trial of disputed factual issues. *Rizzo v Kretschmer,* 389 Mich 363, 370–374; 207 NW2d 316 (1973), *Wynglass v Prudential Life Ins Co,* 68 Mich App 514, 516; 242 NW2d 824 (1976), *McLaughlin v Consumers Power Co,* 52 Mich App 663, 666; 218 NW2d 122 (1974).

On the other hand, we note that a party opposing the motion for summary judgment based on subrule 117.2(3) must come forward with some proof to establish the existence of a genuine issue of material fact. *Durant v Stahlin, supra* at 638–639, 655–656; *Rizzo v Kretschmer, supra* at 372. If the opposing party offers affidavits, his affidavits must comply with GCR 1963, 116.4. However, defects in opposing affidavits are waived if not objected to at the trial level. *Polite v Michigan Tae Kwan Do Assoc,* 17 Mich App 580, 582, fn 4; 170 NW2d 184 (1969). Though plaintiffs register some objection to the form of defendants' affidavits in this case, we believe they comply adequately with the court rule.

Nevertheless, defendants must come forward with some showing that genuine issues of material fact precluded the granting of summary judgment. Summary judgment has been held proper in a case involving contract interpretation, absent any offer of proof giving rise to issues of fact. *Burroughs Corp v Detroit,* 18 Mich App 668, 674–675; 171 NW2d 678 (1969). But in a case where extrinsic evidence was necessary, interpretation and modification of a contract has been held to be a genuine

issue of material fact. *Greenfield Construction Co, Inc v Detroit,* 66 Mich App 177, 184–185; 238 NW2d 570 (1975).

Defendants argue that the allegations and the affidavits of Holmes and Geyer show fraud in the inducement, moral duress or business compulsion, and that the leases were merely a sham, not intended to have any legal effect. Paragraphs 8, 10, 11, and 13–19 of these affidavits are said to demonstrate the existence of genuine issues of material fact with respect to these claims. We also note that defendants' affirmative defenses include similar claims of fraud and duress, as well as unconscionability and illegality for reasons of public policy.

As to defendants' allegations of fraud, duress, or sham, we would observe that parol evidence would be admissible to prove them:

"A number of well-established exceptions to the parol evidence rule have been recognized, however, by Michigan courts. For example, the rule does not preclude admission of extrinsic evidence showing: that the writing was a sham, not intended to create legal relations * * * ; that the contract has no efficacy or effect because of fraud illegality, or mistake * * * ; that the parties did not 'integrate' their agreement, or assent to it as the final embodiment of their understanding * * * ; or that the agreement was only 'partially integrated' because essential elements were not reduced to writing * * * ." *Goodwin, Inc v Orson E Coe Pontiac, Inc,* 392 Mich 195, 204; 220 NW2d 664 (1974). (Citations omitted.) See also *Union Oil Co of California v Newton,* 397 Mich 486, 488; 245 NW2d 11 (1976).

Several cases have allowed parol evidence to show fraud. *Schupp v Davey Tree Expert Co,* 235 Mich 268, 271; 209 NW 85 (1926). In *Schupp,* one of defendant's foremen noticed that one of plain-

tiff's trees was in need of "tree surgery". He informed plaintiff of this fact, and advised him that the work required would not be difficult and could be done at nominal cost. Plaintiff agreed. The foreman began work, but the job continued without conclusion. Plaintiff finally told the foreman to stop work. The foreman then asked plaintiff to sign a contract, ostensibly to show his boss that he was through with the job. Plaintiff signed without understanding, and defendant sued for the $432 contract price. Plaintiff offered to pay $100. The Court in *Schupp* permitted plaintiff to introduce parol evidence to show fraud. The Court stated there:

"We have given due consideration to the business experience and supposed acumen of plaintiff and his confessed simplicity in sending out the paper over his signature to accomplish a purpose directly opposed to its terms, but feel that his guilelessness on this occasion should not cause us to overlook the guile employed by defendant's representative. The fraud worked because plaintiff was careless, but this did not render it any less a fraud." *Schupp v Davey Tree Expert Co, supra* at 271.

In the present case, defendants' allegations are somewhat similar to those of the plaintiff in *Schupp.* Defendants claim that the leases were actually negotiated because of tax advantages to be gained by the plaintiffs, and that all parties understood defendants' obligations under the leases would cease when plaintiffs had recouped their investment in the restaurant equipment. As did the plaintiff in *Schupp,* these defendants claim that because of the fraudulent misrepresentations of the opposite party they were induced to enter into a written agreement which was to have no legal effect.

Therefore, we believe parol evidence would be admissible in this case. Contrary to plaintiffs' contention, we also recognize that the trial court is not limited to affidavits in deciding a motion for summary judgment under GCR 1963, 117.2(3). *Rizzo v Kretschmer, supra* at 374. He may weigh in his decision "affidavits, together with the pleadings, depositions, admissions, and documentary evidence then filed". GCR 1963, 117.3.

Viewing the record on this basis, we find representations in both defendants' affidavits in opposition to plaintiffs' motion for summary judgment and in their affirmative defenses that the parties understood the equipment provided by plaintiffs and financed by them through bank loans, would be repaid to them by defendants as a loan. Further, pursuant to this understanding, defendants believed plaintiffs wished to treat the loans as "equipment leases" in order to obtain the full benefit of the 7% investment tax credit and depreciation tax benefit. Defendants then state that immediately prior to closing the sale, plaintiffs demanded that defendants sign the lease agreement in question as a precondition to finalizing the transaction, that actual lease agreement being contrary to the purported "loan" agreement reached previously. We believe proper development of these allegations might well represent grounds for finding fraud. See *Hi-Way Motor Co v International Harvester Co,* 398 Mich 330, 336; 247 NW2d 813 (1976).

Certainly, in light most favorable to defendants, we believe fraud could be proved were evidence to show that plaintiffs misrepresented the "lease agreement" to defendants as a loan, that when so represented, plaintiffs knew the lease would be enforced as a lease; that defendants relied upon

plaintiffs' representations in approaching the contract signing; and that signing the agreement as a lease entailed loss of those lease payments to plaintiffs. Under the circumstances, the trial court's finding that no material issue of fact existed pursuant to GCR 1963, 117.2(3) was improper. *Rizzo v Kretschmer, supra* at 375–380.

Having decided to reverse on the basis of defendants' presentation of material issues of fact, we would only note, though MCLA 440.2302; MSA 19.2302 may not strictly apply under these purported "leases", authority does require the trial court to look into the commercial setting, purpose and effect of the leases. *Reed v Kaydon Engineering Corp,* 38 Mich App 353, 355–356; 196 NW2d 487 (1972).

Consequently, concerning the question whether the allegedly unconscionable agreement entitles defendants to a hearing, we suggest the trial court cannot properly decide the issue of unconscionability without determining whether defendants' claims were true or false. In a motion for summary judgment, the trial court may not pass upon the credibility of the affiants. Since the trial court was required to look into the "commercial setting, purpose, and effect" of the allegedly unconscionable leases, some type of hearing should have been held.

In *Reed,* the Court found summary judgment inappropriate in this situation and remanded for trial. *Reed v Kaydon Engineering Corp, supra* at 356–357. In the present case, where we have found genuine issues of material fact, and where defendants' claim of unconscionability is alleged with some particularity in their affirmative defenses, we believe the court was in error by not conducting further hearing on the unconscionability question.

Although defendants did not file a motion for partial summary judgment as to Ponderosa No. 3, they made their position clear to the trial court. Defendants ask us on the present appeal to dismiss Ponderosa No. 3 as a party defendant. While we have the power to do so, we feel the more appropriate remedy for defendants is to allow the trial court to decide the question first. Therefore, on remand, we suggest defendants once again present this problem to the trial court for resolution.

We might observe finally that defendants intended to sign the leases as a corporation, and so are consequently precluded from asserting the defense of usury. See MCLA 450.1275; MSA 21.200(275). A Michigan statute has been held to effectively repeal the usury statutes insofar as corporations are concerned. *Grinnell Realty Co v General Casualty & Surety Co,* 253 Mich 16, 18; 234 NW 125 (1931), *William S and John H Thomas, Inc v Union Trust Co,* 251 Mich 279, 281–285; 231 NW 619 (1930). We thus find defendants' claim here without merit. However, defendants' representation that the purported leases were actually intended as loans does relate directly to their allegation of fraud.

Having reviewed defendants' allegation that summary judgment was incorrectly granted to plaintiffs, we believe a basis does exist to find genuine issues of fact and so reverse the trial court's decision.

Reversed and remanded for proceedings in conformity with this opinion. Costs to be paid by plaintiffs-appellees.