995 F.2d 1066
 NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
In re CADILLAC WILDWOOD DEVELOPMENT CORPORATION, Debtor.
CADILLAC WILDWOOD DEVELOPMENT CORPORATION, Plaintiff-Appellant,
v.
NORTHWESTERN SAVINGS AND LOAN ASSOCIATION, Defendant-Appellee.
 No. 92-2037.
 United States Court of Appeals, Sixth Circuit.
 May 26, 1993.
 
 Before JONES and BATCHELDER, Circuit Judges, and ENGEL, Senior Circuit Judge.
 PER CURIAM.
 
 
 1
 Cadillac Wildwood, a Michigan real estate developer, filed Chapter 11 bankruptcy in 1982. A major creditor, Northwestern Savings & Loan, had financed a condominium project which had apparently been Cadillac's primary raison d'etre; Northwestern filed a proof of claim for $400,000 in principal and $125,306.68 in interest with the Bankruptcy Court in 1985. The loan upon which Northwestern's claim was based, written in 1980, specified an interest rate of 16 1/2%. In 1991, Cadillac (now operating under a plan of reorganization) filed an objection to Northwestern's claim which contended that the loan was tainted with usury due to an overstatement of the amount of interest owed, improper calculation of interest effectively yielding Northwestern a rate greater than 16 1/2%, and an overcharge for loan closing costs. Both the Bankruptcy Court and the District Court held that Michigan's "corporate exception" to its usury statute precluded Cadillac, as a corporate borrower, from asserting the defense of usury. We agree.
 
 
 2
 Michigan's usury law specifies, in relevant part, that
 
 
 3
 [t]he interest of money shall be at the rate of $5.00 upon $100.00 for a year, and at the same rate for a greater or less sum, and for a longer or shorter time, except that in all cases it shall be lawful for the parties to stipulate in writing for the payment of any rate of interest, not exceeding 7% per annum.
 
 
 4
 M.C.L. § 438.31. In order to comport Michigan law with economic reality, the legislature has provided a host of exceptions to the statute, including the so-called "corporate exception" at issue in this case, which provides:
 
 
 5
 A ... corporation ... may by agreement in writing, and not otherwise, agree to pay a rate of interest in excess of the legal rate and the defense of usury shall be prohibited.
 
 
 6
 M.C.L. § 450.1275. Cadillac argues, in essence, that this statute prohibits a corporate borrower from claiming the defense of usury only where a lender has specified an interest rate in writing and has actually charged that agreed-upon rate. Where a lender overcharges his customer, even inadvertently, Cadillac contends, the usury law kicks in, and the aggrieved corporate party may properly invoke the general usury statute, which has the effect of denying the lender any interest and granting the debtor certain costs and fees. M.C.L. § 438.32.
 
 
 7
 We find no Michigan caselaw to support Cadillac's argument. On its face, the corporate exception provision is unambiguous; the second clause is not conditioned on the first. It simply states two propositions: first, corporations may contract in writing to borrow at any rate of interest, and second, corporations may not invoke the defense of usury. The Michigan courts have said as much, holding that the corporate exception "has been held to effectively repeal the usury statutes insofar as corporations are concerned." Bob v. Holmes, 78 Mich.App. 205, 259 N.W.2d 427, 433 (1977). See also Allan v. M & S Mortgage Co., 138 Mich.App. 28, 359 N.W.2d 238 (1984) ("[I]f a loan is made to a corporation, the corporation, by statute, is prohibited from asserting the defense of usury.") Cadillac argues that the statute has been changed since these cases were decided. This is true enough, but if anything, the scope of the corporate exception has been broadened, not narrowed, and most of the changes have been at best cosmetic.
 
 
 8
 Cadillac's interpretation of the corporate exception clashes with the legislative policy which motivated the provision. "The purpose of the usury law is to protect the necessitous borrower." Allan, 359 N.W.2d at 242. While Cadillac would like us to believe it is a "necessitous borrower," it would be unreasonable to stretch allan (which held that lenders cannot force individual borrowers to incorporate in order to permit lenders to charge higher rates) to permit certain "needy" corporations to be protected under the usury statute, which quite clearly excludes all corporations from its protection. The exception, if Cadillac's construction be accepted, would clearly swallow the rule. More importantly, inasmuch as the usury laws "protect the necessitous borrower," they are meant to even the weight of bargaining power between lender and borrower, to protect "desperate and unsophisticated borrowers" from "loan shark[s]." Allan, 359 N.W.2d at 242 (quoting Schneider v. Phelps, 41 N.Y.2d 238, 242-43 (1977)).
 
 
 9
 The corporate exception recognizes that corporations typically enter loan agreements for business purposes, advised by expensive corporate lawyers, and are thus in a better position to bargain with lenders for fair rates, and to assess their own ability to afford high rates of interest. In any event, the record shows nothing suggesting that Cadillac was in desperate straits when it sat down with the Bank to negotiate the loan, or that the alleged overcharges resulted from the Bank's taking advantage of loan terms Cadillac missed due to a lack of sophistication. As both the Bankruptcy Court and the District Court correctly noted, Cadillac's proper remedy is in contract if it believes Northwestern charged it more than the agreed-upon rate. If the usury law ought be stretched to accommodate "necessitous" corporate borrowers, Cadillac should suggest this to the Michigan legislature, not at the bar of this court.
 
 
 10
 For the reasons explained above, the judgment of the District Court is AFFIRMED.
 
 
 11
 ENGEL, Senior Circuit Judge, concurring.
 
 
 12
 I concur in the affirmance of the judgment of the district court, but I am not sufficiently confident of its language to join in the majority opinion. In particular, I am uneasy with the majority's conclusion that a corporate borrower may never raise the defense of usury. The relevant Michigan statutory language is as follows:
 
 
 13
 A domestic or foreign corporation, whether or not formed at the request of a lender or in furtherance of a business enterprise, may be [sic: by] agreement in writing and not otherwise, agree to pay a rate of interest in excess of the legal rate and the defense of usury shall be prohibited.
 
 
 14
 MICH.COMP. LAWS § 450.1275, MICH.STAT. ANN. § 21.200(275). While the language cited is perhaps susceptible to the interpretation reached by the majority, I am too troubled by the term "and not otherwise" to hold outright that the defense of usury in Michigan is altogether denied to corporate borrowers.
 
 
 15
 The difficulty with the broader language employed by the majority is that it would appear to preclude a usury defense when the corporate borrower has agreed to pay a rate of interest in excess of the legal rate, but has done so orally through an agent, and not in writing. Whether such a circumstance might give rise to a defense of usury under the statute in question, I would leave to the determination of Michigan courts when and if those specific facts arise.
 
 
 16
 The case of Bob v. Holmes, 78 Mich.App. 205, 259 N.W.2d 427 (1977), on which the majority relies, is of doubtful support. It cites only two cases, decided in 1930 and 1931, when the statute in fact did prohibit the defense of usury to all corporations. Allan v. M & S Mortgage Co., 138 Mich.App. 28, 359 N.W.2d 238 (1984), is likewise of very little help to us here, since the Allan court was describing New York law, and since the case stood for the proposition, later abrogated by statute, that the defense of usury is available to Michigan corporations incorporated to obtain loans to further personal projects: "[W]here the loan is made to an individual borrower to discharge his personal debts and obligations, and not in furtherance of a corporate or business enterprise, the individual may assert the defense of usury." Id. at 243.
 
 
 17
 Nonetheless, the record does not persuade me that the Michigan legislature could have intended that the penalties of the usury laws should have been available to appellant under the facts of this case, where the excess charges involved simply a mistake in bookkeeping, a small closing charge of which the creditor was ignorant, and the use of a 360-day year in calculating interest. These charges, if not altogether de minimis, are certainly so arguable that to peg the defense of usury on them would be tantamount to awarding the debtor a windfall.