CULLINS v. MAGIC MORTGAGE, INC.

1. MOTIONS—DISMISSAL—DIRECTED VERDICT—COURT RULES.
   A motion for judgment made at the close of plaintiffs' proofs should be considered as a motion to dismiss under court rules because a trial judge, sitting without a jury, is the trier of fact and, when considering a motion to dismiss, is not only required to weigh the evidence before him but also to make findings of fact to accompany a judgment of dismissal (GCR 1963, 504.2, 515.1).

2. MOTIONS—DISMISSAL—FINDINGS OF FACT—COURT RULES.
   Trial court erred in granting defendants a directed verdict when they moved for judgment at the close of plaintiffs' proofs since the motion for judgment should have been considered under court rules as a motion to dismiss and should have been accompanied by findings of fact (GCR 1963, 504.2, 515.1).

REFERENCES FOR POINTS IN HEADNOTES

[1, 2] 24 Am Jur 2d, Dismissal, Discontinuance and Nonsuit §§ 48, 50.
[3–7] 55 Am Jur, Usury § 90.

3. Mortgages—Equitable Mortgages—Usury.

Plaintiffs were entitled to an equitable mortgage from defendant mortgage company where defendant, knowing that plaintiffs' redemption period from a land contract foreclosure was about to expire, purchased the vendors' interest instead of lending money to plaintiffs to redeem and then, after a year of regular monthly contract payments by plaintiffs, refused to convert the land contract into mortgage as promised unless plaintiffs consented to a mortgage covering moneys which they had not received since their transaction, even though it was not in the form of a loan, was tainted with usury.

4. Usury—Examination of Transaction.

The purpose of the law of usury is to protect the necessitous borrower from extortion and to accomplish this purpose a court must look at the real nature and substance of a transaction, not at its form or color.

5. Usury—Borrower's Financial Difficulties—Lender's Knowledge.

The central questions in cases involving possible usury are whether plaintiff borrower was financially hard-pressed and whether the lender had knowledge of the borrower's predicament and took unfair advantage of it.

6. Usury—Removal of Taint—Tainted Obligation—Cancellation.

An indebtedness infected with usury is deemed disinfected if the tainted obligation is finally cancelled or abandoned with the borrower's full knowledge and consent, and a new obligation, containing no part of the usury, is executed in legal form, and is supported solely by the moral obligation resting upon the borrower to pay the money actually received with legal interest.

7. Usury—Continuation of Usury—New Obligation.

So long as the original usurious obligation continues to exist, based upon a consideration in which usury inheres, the taint of usury continues in a new obligation whatever its form even though the borrower is allowed to assume a different relation to the security affected with usury.

Appeal from Wayne, John B. Swainson, J. Submitted Division 1 March 9, 1970, at Detroit. (Docket No. 6,219.) Decided April 24, 1970.

Complaint by James D. Cullins and Arnada Cullins against Magic Mortgage, Inc., a Michigan corporation, and Louis El-Chonen to enjoin a foreclosure on a mortgage. Directed verdict granted defendants. Plaintiffs appeal. Reversed and remanded.

*Milton Roberts (Benjamin W. Grant,* of counsel), for plaintiffs.

*Lampert and Fried,* for defendants.

Before: T. M. BURNS, P. J., and HOLBROOK and BRONSON, JJ.

T. M. BURNS, P. J. This is an appeal from the granting of judgment of directed verdict for defendants on plaintiffs' suit to enjoin foreclosure and sale of plaintiffs' house for default on a mortgage.

The facts appear to be as follows: The plaintiffs purchased their home on a land contract for $12,500 from Paul and Mary Duika in July of 1953. On October 7, 1953, the Duikas assigned their vendors' interest in the contract to David and Henry Rott. For the next ten years, plaintiffs paid on the contract, making approximately $8,500 in payments. In late 1963, however, plaintiff, James D. Cullins, became ill and was unable to keep up the payments. When the plaintiffs were behind $500 in payments, the Rotts instituted proceedings and foreclosed on the land contract on January 29, 1964, at which time the land contract showed an unpaid balance of $4,200.

With the period of redemption about to expire, plaintiffs, in response to an advertisement which indicated that it would stop land foreclosures and

repossessions and lend on mortgages, contacted defendant, Magic Mortgage Company.

The plaintiffs were told to come into the office and to bring all their papers related to the property and foreclosure. At this first meeting although defendant, El-Chonen, told plaintiffs that he would not let the Rotts get their home for $500, he did not offer, however, to lend them the money needed to redeem. El-Chonen instead discussed the possibility of a mortgage in the approximate amount of $8,500 which was to pay off the balance of $4,200 owed to the Rotts, to pay back taxes on the property, and to pay some $2,000 of accumulated bills with the $2,500 difference to be defendant's profit. Although no agreement was reached, the plaintiffs did agree to return the next day.

When the plaintiffs returned the next day, they found out that the defendants had in the interim purchased the Rotts' interest in the land contract. El-Chonen then offered the plaintiffs the following arrangement. He would keep the title to the property. Plaintiffs, in order to demonstrate good faith and reliability, were to make monthly payments of $100. At the end of a year, defendant was to convert the land contract into an $8,500 mortgage, transfer title to plaintiffs, and credit them with the $1,200 in payments. James Cullins testified that he assumed that a personal loan of $2,000, discussed the previous evening when the $8,500 mortgage was mentioned, would be made by defendant to plaintiffs at that time.

Plaintiffs agreed to and followed the provisions stated above for over a year, during which time, according to testimony on the record, several of the monthly receipts which were given to plaintiffs indicated that the monthly payments were rent, rather than on the contract. When the plaintiffs objected

that they were making purchase payments and not rent payments, they were told to disregard the nomenclature on the receipts.

With the passing of a year, plaintiffs sought to have defendants convert the land contract into a mortgage. A dispute arose between the parties concerning the amount of the mortgage. In consideration of the $4,200 contract purchase price, defendants sought an $8,500 mortgage. Plaintiffs, however, considered that since the defendant had never loaned them the $2,000 for personal bills, a mortgage of $6,500 would be fairer. After some negotiations, a mortgage for $7,500 was signed by the plaintiffs.

Five months later, James Cullins became ill and being unable to meet the payments, defaulted. Defendants then began foreclosure by advertisement. Plaintiffs started this suit to enjoin the foreclosure by defendants. A temporary injunction was entered and plaintiffs were ordered to make monthly payments to the court. At the time of the trial, plaintiffs had, pursuant to this order, deposited $2,250 with the court. Adding the money deposit with the court to that already paid, plaintiffs' total investment in their home comes to approximately $12,500. This figure represents $8,500 paid to the original vendors and their successors, the Rotts; $1,200 paid to defendants from August 1964 to August 1965; $500 paid to defendants under the mortgage; and $2,250 paid to the court.

At the close of plaintiffs' proofs, defendants made a "motion for judgment." The trial court treated it as a motion for directed verdict, GCR 1963, 515.1, and granted it.

This motion should properly have been considered as a motion to dismiss. GCR 1963, 504.2. There-

fore, the trial court erred in considering the motion as one for a directed verdict.

The difference between the two motions is significant because of the responsibility of the trier of fact.

If there is a jury, the trial judge must not invade their province. Thus, if he is faced with a motion for directed verdict, he must view the evidence in the light most favorable to the party against whom the motion is directed. *State Automobile Mutual Insurance Company* v. *Ropp* (1967), 7 Mich App 698, 701.

When sitting without a jury, however, the trial judge as the trier of fact, when considering a motion to dismiss, must weigh the evidence before him. *Mutual Benefit Life Insurance Company* v. *Abbott* (1968), 9 Mich App 547, 552.

The motion to dismiss when granted against a plaintiff, therefore, must be accompanied by findings of fact. GCR 1963, 504.2. There were no such findings of fact in this case.

Although we might remand for findings of fact, such a remand would leave the substantive question raised by this appeal unanswered. Therefore, we turn to whether the trial court erred in relying on the cases of *Gerasimos* v. *Continental Bank* (1927), 237 Mich 513, and *Sanderson* v. *Ressler* (1923), 223 Mich 232, 234, in finding that the defendants could sell to plaintiffs or whomever they choose, at any price they choose, without the agreement being declared usurious since they had purchased the vendors' interest and plaintiffs had failed to redeem.

The plaintiffs contend that since the defendants knew of plaintiffs' plight, an equitable mortgage was imposed upon them regardless of the form of the transaction. We agree.

The trial court erred as to the law. He was, and we are, bound by the decision of our Supreme Court in *Wilcox* v. *Moore* (1958), 354 Mich 499. Although the transaction between the plaintiffs and defendants did not take the form of a loan, neither did the transaction before the Court in *Wilcox, supra.* Yet, an equitable mortgage was established with resultant application of the law of usury.

The Court in *Wilcox, supra,* said on pp 504, 505:

"There is no need, at this late date in the law of usury (see Leviticus 25: 35–37; Deuteronomy 23: 19, 20; Saint Chrysostom's Fifth Homily on the Gospel of St. Matthew; CL 1948, § 438.52 [Stat Ann § 19.12]) to discuss its rationale. Suffice to say that its purpose is to protect the necessitous borrower from extortion. In the accomplishment of this purpose a court must look squarely at the real nature of the transaction, thus avoiding, so far as lies within its power, the betrayal of justice by the cloak of words, the contrivances of form, or the paper tigers of the crafty. We are interested not in form or color but in nature and substance.

"It is insisted on the part of appellee that all we have here is a good-faith purchase of property for $15,000 and a subsequent good-faith sale thereof for $21,000, 'an outright sale on land contract.' It is not to be denied that there are numerous common characteristics existing between the contract of sale and purchase on the one hand, and that of loan and mortgage on the other. But as has so often been pointed out by discerning courts there is one situation (possibly above all others) in which 'an atmosphere of doubt at once arises.' (Judge Denison in *Stark* v. *Bauer Cooperage Co.* [CA6, 1925], 3 F2d 214, 216, *certiorari denied,* 267 US 604 [45 S Ct 464; 69 L Ed 809].) This is where we find, again in the words of Judge Denison, that 'one recently the indebted owner has shifted his position and

become merely an executory purchaser.' The court
continues (p 216):

" 'If there is an absolute promise to pay the same
amount that he was formerly owing, and to do so
as a condition of getting back the title with which
he had just parted, the inference that there is noth-
ing but a debt with security for its repayment
becomes a strong one; but the debt which creates
this atmosphere of doubt is not the new debt, it is
the old one.

" 'So far as we can find, every case in which the
existence of an absolute promise by an ostensible
vendee to pay the sum involved has been thought
to indicate that the transaction was merely a loan
instead of having the character in which it was
made to appear, is a case where the contract vendee
had parted with his recent title and was arranging
to get it back again.' "

The principle established in *Wilcox* v. *Moore, supra,*
which applies here was extended to "credit pur-
chasers" in *Matthews* v. *Aluminum Acceptance
Corporation* (1965), 1 Mich App 570. Although the
defendants assert that the Supreme Court repudi-
ated *Wilcox* in *Ellis* v. *Wayne Real Estate Company*
(1959), 357 Mich 115, 120, a careful reading of that
case divulges that all the Court said about *Wilcox*
is that "no question of usury has been raised," there.

The central question in cases such as this are
whether the plaintiff borrower is "hard pressed"
(See *Borinstein* v. *Raycon Land Company* (1963),
370 Mich 359, 361), and whether the lender has
knowledge of this predicament and has taken ad-
vantage of it unfairly. We find such to be the
positions of plaintiff and defendant here.

Because of our decision herein, we do not pass on
the issue raised by plaintiffs that the payment by
defendant of the balance of $4,200 in July, 1964,
owed to the Rotts under the land contract was paid

on behalf of plaintiffs and established an equitable mortgage.

Here, we only reverse the order of the trial court and remand with the direction that the trial court apply the principles of *Wilcox* to the entire transaction in establishing the amount fairly due.

Viewing the case as we do, and in response to defendants' assertion that a valid compromise was entered into in August of 1965, thus removing the taint of usury from the equitable mortgage, we direct the trial court's attention to *Union Guardian Trust Co.* v. *Crawford* (1935), 270 Mich 207. The Court in *Union Guardian Trust Co.* v. *Crawford,* said at pp 210, 211:

"It seems to be the rule that the general principle determining when an indebtedness infected with usury is to be deemed disinfected that if the tainted obligation is, with full knowledge and consent of the borrower finally canceled or abandoned, and a new obligation, containing no part of the usury, is executed in legal form, and supported solely by the moral obligation resting upon the borrower to pay the money actually received with legal interest thereon, such new obligation is valid and enforceable. *But so long as the original usurious obligation continues to exist, based upon a consideration in which usury inheres, the taint of usury persists whatever be the form which the subsequent dealings of the parties may cause it to assume, and even though new parties may have been introduced, or the borrower allowed to asume a different relation to the security affected with usury. Carr* v. *Taylor* (1900), 30 Misc 617 (62 NY Supp 849); 39 Cyc 1002; *Gladwin State Bank* v. *Dow* (1920), 212 Mich 521 (13 ALR 1233)." (Emphasis added.)

Reversed and remanded for proceedings not inconsistent with this opinion. Costs to appellant.

All concurred.