**In re CADILLAC WILDWOOD DEVELOPMENT CORPORATION, Debtor.**

**Bankruptcy No. HG 82–00358.**

United States Bankruptcy Court,
W.D. Michigan.

March 4, 1992.

Harold E. Nelson, Clary, Nantz, Wood, Hoffius, Rankin & Cooper, Grand Rapids, Mich., for the debtor.

Jack E. Boynton, Murchie, Calcutt & Boynton, Traverse City, Mich., for Northwestern Sav. Bank & Trust.

## OPINION

LAURENCE E. HOWARD, Bankruptcy Judge.

This matter is before the Court to decide the motion brought by the Debtor, Cadillac

Wildwood Development Corporation, to reconsider and recalculate the allowed secured and unsecured claim of Northwestern Savings & Loan Association (hereinafter, "Northwestern"). The Debtor's request is made pursuant to § 502(j) of the Bankruptcy Code (sometimes referred to, generally, as "the Code") and FED. R.BANKR.P. 3007 and 3008. I have jurisdiction to decide the issues raised pursuant to 28 U.S.C. § 1334(b) and § 157(b)(2)(B).

The Debtor first requests that I reconsider the previously allowed claims of Northwestern. Assuming reconsideration is granted, the Debtor argues that the amount of Northwestern's claim should be recalculated and a large portion of it disallowed due to the erroneous inclusion of post-petition interest in Northwestern's proof of claim in violation of § 506(b) of the Code and due to the charge of usurious interest. Northwestern has agreed that it improperly included post-petition interest in its proof of claim and failed to credit two payments made by the Debtor. The parties have stipulated to the amount of Northwestern's claim absent a finding that usurious interest was charged. This leaves the Debtor's defense of usury as the remaining objection to the claim of Northwestern.

FACTS

The Debtor is a Michigan corporation engaged in the construction and selling of condominium residences. On January 11, 1980, the Debtor entered into a $400,000.00 construction loan (hereinafter, the "loan") with Northwestern to finance the construction of condominium units. The loan was evidenced by a promissory note (referred to as the "note") and secured by a real estate mortgage. The note provided for payment "with interest on unpaid principal from time to time outstanding at the rate of sixteen and one-half percent (16½%) per annum." The loan was guaranteed by

stockholders of the Debtor and their spouses.

It is undisputed that the Debtor agreed, in addition to the repayment of principal plus interest, to pay an $8,000.00 commitment fee and $4,000.00 in closing costs as part of the loan transaction. The $4,000.00 in closing costs included a $2,000.00 charge for attorney fees. The Debtor paid the $8,000.00 commitment fee and wound up paying $4,003.00 in closing costs; that is, three dollars extra in closing costs than what was agreed upon by the parties at the onset of the loan.[1] At the loan closing, Northwestern failed to furnish a loan settlement statement indicating the loan costs paid or to be paid by the borrower.[2]

On February 5, 1982, the Debtor filed a voluntary petition seeking relief under Chapter 11 of the Code. Northwestern filed its proof of claim on January 7, 1985 in the total amount of $743,146.84. Northwestern now admits that this proof of claim was too high for several reasons. First, Northwestern failed to credit the balance owing on the loan with two payments made by the Debtor totalling $10,906.69. Northwestern also admits that it included post-petition interest in the value of its claim in violation of § 506(b) of the Code. The parties agree that after crediting payments made by the Debtor and by the guarantors, and taking into account the admitted elimination of post-petition interest, Northwestern now possesses a secured claim for $386,488.72 plus interest. Northwestern's unsecured claim has been reduced to zero. (Letter from Mr. Boynton to the Court of December 4, 1991 and letter from Mr. Nelson to Mr. Boynton of December 3, 1991.) The value of this secured claim is subject to further adjustment depending on how I rule on the Debtor's defense of usury.

The Debtor's Fourth Amended Plan of Reorganization was confirmed by the Court

1. Northwestern agrees that the Debtor actually paid three dollars extra in loan costs than what was agreed to by the parties. (*See,* Tr. November 26, 1991 at 22.) Northwestern contends, however, that it did not demand such payment and did not know such payment was made until

the defense of usury was raised by the Debtor. *Id.*

2. Again, this fact is undisputed by Northwestern who has argued against the Debtor's legal conclusions but has not presented any different factual conclusions.

on June 5, 1985. The Plan provides for Northwestern's allowed secured claim in Class Three and any remaining claim in Class Four as a general unsecured claim. In light of the parties' stipulation, only the value of the claim included in Class Three is in dispute.

*Procedural History*

On December 21, 1981, Northwestern commenced a suit in the Circuit Court for Kent County, Michigan against the Debtor and the loan guarantors to recover unpaid principal and interest. Proceedings against the Debtor were stayed by the filing of its petition for relief, but continued against the guarantors. Trial before the Circuit Court for the County of Kent was held on January 27, 1986. In this state court action, the guarantors asserted the defense of usury against the claim of Northwestern.

The Circuit Court found that the $8,000.00 commitment fee and the $2,000.00 in attorney fees were in fact additional interest charges and needed to be considered in determining the actual rate of interest Northwestern required the parties to pay.[3] The Circuit Court held that the additional interest charges raised the rate of interest in the written loan agreement above the percentage called for thereby rendering the transaction usurious. The Circuit Court concluded that since the transaction was infected with usury, all interest payments made thus far should be applied toward the principal balance owing. A copy of the Circuit Court decision was attached to the Debtor's Motion for consideration by this Court.

The Michigan Court of Appeals found that the commitment fee and the $4,000.00

in loan costs were agreed to in writing as part of the loan transaction. In support of its conclusion, the Court of Appeals referred to the promissory note evidencing the indebtedness as well as a series of letters exchanged between the Debtor and Northwestern expressing the parties' concurrence that the Debtor would pay the additional costs. Finding that the 16½% per annum interest rate and the loan costs and commitment fee were all agreed to in writing, the Court of Appeals held that the guarantors were precluded from raising the defense of usury by an exception for corporations from the general usury prohibition.[4] The Court of Appeals concluded that the guarantors were liable for all interest charges. The Court of Appeals reversed the Circuit Court and remanded the case for a new computation of the amount owing to Northwestern under the loan agreement. Again, a copy of this decision was provided by the Debtor. The Michigan Supreme Court denied leave to appeal and subsequently denied a motion to reconsider the decision by the Court of Appeals. *Northwestern Savings & Loan Association v. Cadillac Wildwood Development Corporation,* 431 Mich. 870 (1988) (denying leave to appeal); *Northwestern Savings & Loan Association v. Cadillac Wildwood Development Corporation,* No. 83140(37), 1988 Mich. LEXIS 2165 (Nov. 30, 1988) (denying reconsideration).

The Debtor filed the present motion to reconsider the allowed secured claim of Northwestern on October 16, 1991. A hearing was held on November 26, 1991.

LAW AND ARGUMENT

With the Debtor's § 506(b) objection to Northwestern's claim settled, the remain-

---

**3.** The Circuit Court based its conclusion on MICH.COMP. LAWS ANN. § 489.779 which provided that a federal savings & loan may require borrowing members to pay all reasonable and necessary charges incurred in connection with the loan and that these charges shall be in addition to interest. The Circuit Court found an $8,000.00 commitment fee and $2,000.00 in attorney fees to be unreasonable charges outside of the statute's protection and therefore included as interest when considering whether Northwestern acted usuriously. The statute cited by the Circuit Court has since been repealed and

replaced by MICH.COMP. LAWS ANN. § 491.730 without any significant change.

**4.** The exception for corporations is found in MICH.STAT.ANN. § 21.200(275) [450.1275] stating that:

[a] domestic or foreign corporation, whether or not formed at the request of a lender or in furtherance of a business enterprise, may be [sic] agreement in writing, and not otherwise, agree to pay a rate of interest in excess of the legal rate and the defense of usury shall be prohibited.

ing issues concern whether Northwestern charged usurious interest in the loan transaction. If it is found that Northwestern violated the usury statute, the amount of the Class Three secured claim will have to be recomputed based on the penalty imposed for the commission of usury under Michigan law.

11 U.S.C. § 502(j) provides, in part, that "[a] claim that has been allowed or disallowed may be reconsidered for cause. A reconsidered claim may be allowed or disallowed according to the equities of the case." In order to grant the Debtor's request for reconsideration, sufficient cause must be shown. Upon the showing of cause, the objection to the claim of Northwestern, raised as the defense of usury, can then be considered. 11 U.S.C. § 502(b)(1) provides that upon the filing of an objection to a claim the court shall determine the amount of such claim and disallow all or part of the claim to the extent that it is unenforceable against the debtor by applicable law.[5]

The general prohibition against the charge of usurious interest is set forth in MICH.STAT.ANN. § 19.15(1) [438.31] which states:

> The interest of money shall be at the rate of $5.00 upon $100.00 for a year ... except that in all cases it shall be lawful for the parties to stipulate in writing for the payment of any rate of interest, not exceeding 7% per annum.

■ As could be expected, due to modern lending practices and the general escalation of interest rates, this statute has become littered with exceptions. The Debtor concedes that two exceptions are applicable to the proceedings before me. As already noted, MICH.STAT.ANN. § 21.-200(275) [450.1275] provides that a domestic corporation may by agreement in writing "agree to pay in excess of the legal rate." Similarly, under MICH.STAT.ANN.

§ 19.15(1c)(2) [438.31c(2)] the parties to a note secured by a first lien against real property "may agree in writing for the payment of any rate of interest." The Debtor agrees that the loan implicates these exceptions. Additionally, MICH.STAT. ANN. § 19.15(1c)(11) [438.31c(11)] provides that parties to a note of $100,000.00 or more "the bona fide primary security for which is a lien against real property other than a single family residence" may agree in writing for the payment of any rate of interest. It seems likely that MICH.STAT. ANN. § 19.15(1c)(11) [438.31c(11)] would also apply as an exception to the loan. To make this determination, however, I would have to make a factual conclusion as to whether the collateral was a single family residence. The Debtor was not given an opportunity to argue this point. Therefore, since the two other exceptions are sufficient, I will cease consideration of MICH. STAT.ANN. § 19.15(1c)(11) [438.31c(11)].

Taken together, these exceptions serve to remove the loan formalized on January 11, 1980 from the prohibition against charging greater than 7% interest per annum. The Note entered into between the Debtor and Northwestern, calling for 16½% interest meets and is protected by the statutory exceptions.

■ Likewise, the agreement calling for the payment of $4,000.00 in loan costs and an $8,000.00 commitment fee is also removed from the general usury prohibition under the two exceptions. How these two fees are considered to be interest charges requires explaining. Generally, a savings & loan institution may require a borrower to pay reasonable and necessary closing costs or loan processing fees which are actually incurred. These charges are not considered interest and therefore are not subject to any law which limits the rate of interest that can be exacted. MICH.STAT.

---

5. 11 U.S.C. § 502(b)(1) states that:
   [e]xcept as provided in subsections (e)(2), (f), (g), (h) and (i) of this section, if such objection to a claim is made, the court, after notice and hearing, shall determine the amount of such claim in lawful currency of the United States as of the date of the filing of the peti-

tion, and shall allow such claim in such amount, except to the extent that—
   (1) such claim is unenforceable against the debtor and property of the debtor, under any agreement or applicable law for a reason other than because such claim is contingent or unmatured.

ANN. § 23.602(730)(1) & (2) [491.730(1, 2)]. This same statutory provision mandates that the association furnish a loan settlement statement to each borrower upon the closing of the loan. MICH.STAT.ANN. § 23.-602(730)(3) [491.730(3)]. The Debtor maintains, and Northwestern has offered no argument in rebuttal, that by failing to furnish the Debtor with a loan closing statement, Northwestern lost the ability to require a borrower to pay reasonable costs without having such costs considered to be interest. Without any argument against such a conclusion, I must concur that the charge for closing costs and the commitment fee constituted additional interest. But, I would again reinforce what has already been admitted by the Debtor, (See Debtor's Motion to Reconsider Allowed Secured Claim and Objecting to Unsecured Claim of Northwestern Savings & Loan Association ¶ 7(C) at 3–4), that both charges were agreed to in writing and fall under exceptions to the usury prohibition.

The effect of charging usurious interest is found in MICH.STAT.ANN. § 19.15(2) [438.32] as follows:

> Any seller or lender or his assigns who enters into any contract or agreement which does not comply with the provisions of this act or charges interest in excess of that allowed by this act is barred from the recovery of any interest, any official fees, delinquency or collection charge, attorney fees or court costs and the borrower or buyer shall be entitled to recover his attorney fees and court costs from the seller, lender or assigns.

Under the statutory penalty, a lender is barred from collecting any interest.

The Debtor argues that despite the exceptions, Northwestern still charged usurious interest and is subject to the statutory penalty. The Debtor refers to three factual incidents in support of its contention. All begin with the assumption that the loan agreement satisfies and is not in violation of any Michigan statute because it is a written agreement falling under the exceptions listed. But, the Debtor argues that if Northwestern required the payment of any interest greater than what was called for in the loan agreement, this interest charge would be outside the statutory exception thereby rendering the entire transaction usurious. Basically, the Debtor asserts that the amount of interest set forth in the loan agreement now serves as the maximum rate of interest allowable. By charging amounts greater than what was called for in the written loan agreement, Northwestern has exacted usurious interest and its secured claim is subject to reduction in accordance with the terms of MICH.STAT. ANN. § 19.15(2) [438.32].

Also essential to the Debtor's position is its reading of the penalty statute for usury. The Debtor finds two ways a lender can be subject to the statutory penalty in MICH. STAT.ANN. § 19.15(2) [438.32]. The Debtor asserts that usury can be established either by entering into an agreement calling for excessive interest or by charging unlawful interest.

The Debtor alleges that Northwestern charged excessive interest in three ways. First, the Debtor points to the fact that the proof of claim filed by Northwestern was too high. By including excess and unjustified amounts in its proof of claim, the Debtor concludes that Northwestern charged excessive interest. Next, the Debtor argues that the loan only called for the payment of $4,000.00 in closing costs while the Debtor in fact paid $4,003.00. The Debtor claims that the extra three dollars it was required to remit for the benefit of Northwestern rendered the entire transaction usurious. Finally, the Debtor argues that by computing interest on a 360 day year rather than on a 365 day year, Northwestern raised the interest rate called for in the loan above the 16½% figure agreed to in writing. The loan provided that interest would accrue at the rate of 16½% per annum. The Debtor contends that per annum means 365 days in a year or 366 in a leap year. By actually computing interest on a 360 day year, the Debtor alleges that excessive interest, outside of what was agreed to, was charged.

This last contention is the one on which most argument has been expended. Both

sides have submitted exhibits reflecting the computation of interest under the loan agreement based on the two different views of what per annum means. Northwestern computed interest from the date of the loan until the date the Debtor filed its petition in bankruptcy. According to Northwestern's figures, computing interest on a 360 day year results in actually less interest needing to be paid. The Debtor responds that the proper date to compute is from the loan inception to the date of the proof of claim filed by Northwestern. Taking these dates, the Debtor's exhibits reveal that the 360 day year results in a higher interest charge than one based on a 365 day year. The resolution of this issue involves a decision as to what per annum means and what dates should be examined for determining whether Northwestern usuriously charged excessive interest.

Northwestern begins its argument by disputing whether the usury statutes are even applicable to this situation or available to the Debtor as a defense.

In response to the Debtor's first point as to the proof of claim, Northwestern concedes that a computational error occurred and has already agreed to correct the figure. But, Northwestern disputes whether a computational error can render a transaction usurious. Northwestern argues that the three dollar extra charge was again due to error but did not represent an additional interest charge and was de minimis in any event.

Finally, at the November 26, 1991 hearing, Northwestern raised the issue of whether the decision rendered by the Michigan Court of Appeals has any preclusive effect. I will consider this last issue raised first, and then deal with the substance of the Debtor's usury defense.

EFFECT OF STATE COURT DECISION

At the outset it needs to be determined whether the decision rendered by the Michigan Court of Appeals has any preclusive effect upon the issues before this Court. Both the Debtor and Northwestern reference the state court decision. Northwestern argues that the Court of Appeals' decision is conclusive and binding on the ultimate factual and legal issue of whether the loan transaction was tainted by usury with respect to the loan cost charges and the 360 day year for the computation of interest. Paragraph Seven of Northwestern's response to the Debtor's motion states "[t]he usury issue which Debtor seeks to raise has been repeatedly raised, ultimately without success, by the guarantors in the state court action against them." (Resp. of Northwestern Savings & loan Association to Debtor's Mot. to Reconsider Allowed Secured Claim and Objecting to Unsecured Claim ¶ 7 at 2.) In its oral argument, Northwestern again asserted that the Michigan Courts already decided the merit of the usury defense with respect to two of the issues raised by the Debtor. (Tr., November 26, 1991 at 8–9).

The Debtor, in the brief in support of its motion, cites to the Court of Appeals' decision to support its argument that three dollars extra in loan costs were in fact paid, in addition to the commitment fee. (Debtor's Brief in Support of Mot. to Reconsider Allowed Secured Claim and Objecting to Unsecured Claim of Northwestern Savings & Loan Association at 3.) A factual finding of a state court precludes further litigation when it was necessary to support the judgment. *NLRB v. Master Slack and/or Master Trousers Corp.*, 773 F.2d 77 (6th Cir.1985).

Full faith and credit is given by the federal courts to state court determinations under 28 U.S.C. § 1738. The question here is whether the factual and legal conclusions of the Michigan Court of Appeals have any preclusive effect upon this proceeding. The doctrine of collateral estoppel, or issue preclusion, needs to be discussed with respect to the Court of Appeals' conclusions.

Collateral estoppel, or issue preclusion, "has the dual purpose of protecting litigants from the burden of re-litigating an identical issue with the same party or his privy and of promoting judicial economy by preventing needless litigation." *Parklane Hosiery Co., v. Shore*, 439 U.S. 322, 99 S.Ct. 645, 649, 58 L.Ed.2d 552 (1979). Four conditions must be satisfied for issue preclusion, as follows:

1) the issue precluded must be the same one involved in the prior proceeding; 2) the issue must actually have been litigated in the prior proceeding; 3) determination of the issue must have been a critical and necessary part of the decision in the prior proceeding; and 4) the prior forum must have provided the party against whom estoppel is asserted a full and fair opportunity to litigate the issue. *Central Transport, Inc. v. Four Phase Systems, Inc.*, 936 F.2d 256, 259 (6th Cir. 1990). The fourth requirement reflects the conclusion that collateral estoppel can only be asserted against a party to the prior action or one in privity with a prior party.

■ Looking at the first two conditions, the decision by the Court of Appeals cannot be used to completely preclude the Debtor's defense of usury. The Court of Appeals decided that $4,000.00 in loan costs and an $8,000.00 commitment fee was agreed to in writing and thus fell under the corporate exception to the usury statute. In this proceeding, the Debtor argues that it was the three dollars extra in loan costs, paid in addition to what was called for in the written agreement, that rendered the transaction usurious. The Court of Appeals does not mention the three dollar issue. Further, the Court of Appeals makes no conclusion as to the argument that computing interest on a 360 day calendar year constitutes usury. Neither of these issues are precluded from subsequent litigation. Northwestern's argument that the Court of Appeals' decision precludes the Debtor from re-litigating the issue of usury cannot be accepted.

The Debtor seeks to use collateral estoppel to preclude further litigation of various fact questions involving the loan costs and commitment fee. Since Northwestern has admitted these factual conclusions, discussion of the applicability of collateral estoppel is unnecessary. Northwestern, in response to the Debtor's request, admits that the commitment fee of $8,000.00 was required and paid for by the Debtor. (Resp. to Debtor's Request for Admissions and Interrogatories, ¶ 17 at 5.) Northwestern also admits that the Debtor paid $4,003.00

in loan costs. (Resp. ¶ 18 at 5). Finally, as already noted, Northwestern does not object or argue against the conclusion that both these charges can be considered as interest.

Based upon the first two requirements for collateral estoppel and Northwestern's admissions, I need not discuss issue preclusion any further, especially as to the question of whether the Debtor was in privity with the guarantors.

DISCUSSION

■ 11 U.S.C. § 502(j) provides that I may reconsider a claim previously allowed for cause. Once deciding to reconsider the claim, § 502(j) goes on to state that the claim may be allowed or disallowed according to the equities of the case. Here, if the Debtor's argument is correct and Northwestern has charged usurious interest in violation of Michigan statutory law, the Debtor and its bankruptcy estate will be relieved of the payment of Northwestern's secured claim. With the application of all payments made thus far toward principal, the secured claim could possibly be fully satisfied. The possibility of such windfall to the Debtor's bankruptcy estate warrants granting reconsideration. Further, the beneficence of resolving the Debtor's objection on the merits also supports a decision to grant reconsideration. With these two factors in mind, the Debtor's motion to reconsider is granted, and I will proceed to examine the merits of the Debtor's assertions.

■ Michigan law prohibits a lender from charging greater than 7% interest per annum. MICH.STAT.ANN. § 19.15(1) [438.31]. A lender who enters into a contract which calls for interest greater than allowed by statute, or charges interest in excess of what is allowed is barred from the recovery of any interest. MICH.STAT.ANN. § 19.15(2) [438.32]. Any interest previously paid by the debtor is credited toward the satisfaction of the principal amount owing. *In Re Goehring*, 23 B.R. 323, 325 (Bankr. W.D.Mich.1982); *Osinski v. Yowell*, 135 Mich.App. 279, 287, 354 N.W.2d 318 (1984); *Waldorf v. Zinberg*, 106 Mich.App. 159, 164, 307 N.W.2d 749 (1981); *Union Guard-*

*ian Trust Co. v. Crawford,* 270 Mich. 207, 211, 258 N.W. 248 (1935). The lender, however, need not surrender any payment voluntarily made on a usurious contract or note. *Bebee v. Grettenberger,* 82 Mich. App. 416, 423, 266 N.W.2d 829 (1978). The debtor receives a credit toward principal but cannot recover from the lender since usury can only be asserted as a defense to payment and not as a cause of action.

■ The purpose of the Michigan usury statute is to "protect the necessitous borrower from extortion." *Wilcox v. Moore,* 354 Mich. 499, 504, 93 N.W.2d 288; *Cullins v. Magic Mortgage Inc.,* 23 Mich.App. 251, 178 N.W.2d 532 (1970). The statute is remedial for the purpose of public protection. The prohibition against the charge of usurious interest reflects a statutory decision to protect the public from being compelled by the need of credit and by the superior bargaining power of financiers to engage in loan transactions, defined broadly, calling for an excessive rate of interest. The Michigan statute prohibiting the charge of usurious interest is broader than most and deserves liberal application. *Id.* 354 Mich. at 504, 93 N.W.2d 288; *Hillman's v. Em 'N Al's,* 345 Mich. 644, 651, 77 N.W.2d 96 (1956). Courts enforcing Michigan's usury prohibition need to be diligent in determining whether usurious interest has been charged, examining the full nature of the transaction and not limiting itself to the representations of the parties.

Michigan's statutory penalty calling for the forfeiture of any right to interest can only be invoked upon the attempted enforcement of a usurious obligation. The Michigan statutes establish only a defense, a shield that the debtor can utilize against a lender seeking to recover on a usurious obligation. *Allan v. M & S Mortgage Co.,* 138 Mich.App. 28, 41, 359 N.W.2d 238 (1984); *Michigan Mobile Homeowners Ass'n v. Bank of the Commonwealth,* 56 Mich.App. 206, 216, 223 N.W.2d 725 (1974).

In this matter, Northwestern, by filing a proof of claim, has attempted to enforce its right to payment under the construction loan. The Debtor's objection to Northwestern's claim is viewed as a defense.[6] Therefore, the Debtor is able to utilize the provisions of the Michigan statutes dealing with the charge of excessive interest in its objection to the claim of Northwestern.

■ Usury, as a defense, is not an absolute right under Michigan law. It can be waived or subsequently taken away by the creation of a statutory exemption. Two decisions of the Michigan Court of Appeals illustrate this point. They are *Marlowe & Sons v. Farner,* 159 Mich.App. 194, 406 N.W.2d 273 (1987), *lv. appeal den.* 429 Mich. 877 (1987) and *Krause v. Griffis,* 178 Mich.App. 111, 443 N.W.2d 444 (1989). The cases involved the business entity exception found in MICH.STAT.ANN. § 19.15(71) [438.61]. Both cases dealt with the question of whether the business entity exception can be retroactively applied to agreements entered into before the exception was adopted. The cases concur in their finding that the defense of usury is not a vested right and may be extinguished by legislative action that occurs after the defense arises but before it is asserted in a proceeding. *Marlowe & Sons v. Farner,* 159 Mich.App. at 197, 406 N.W.2d 273; *Krause v. Griffis,* 178 Mich.App. at 114, 443 N.W.2d 444; *Michigan Mobile Homeowners Ass'n v. Bank of the Commonwealth,* 56 Mich.App. at 220, 223 N.W.2d 725.[7]

The Debtor has admitted in these proceedings that two statutory exceptions apply to the loan entered into with Northwestern. In its original brief, filed in support of its motion, the Debtor concedes that MICH.STAT.ANN. § 21.200(275) [450.1275] and MICH.STAT.ANN. § 19.15(1c)(2) [438.-31c(2)] remove the loan agreement from

---

**6.** *Cf.* 11 U.S.C. § 558 stating that "[t]he estate shall have the benefit of any defense available to the debtor as against any entity other than the estate, including statutes of limitations, statutes of frauds, usury, and other personal defenses."

**7.** Although not argued by counsel, it is for this reason that the present codification of the exception from the usury prohibition for a written agreement by a corporation is applicable to this proceeding.

the general usury prohibition. (Debtor's Brief in Support of Motion to Reconsider Allowed Secured Claim and Objecting to Unsecured Claim of Northwestern Savings & Loan Association at 6–7.)

■ Despite the admitted existence of these exceptions, the Debtor has raised the novel argument that Northwestern, by charging interest in excess of what was called for in the written agreement, has lost the benefit of the statutory exceptions and again subjected the loan to the defense of usury and the resulting penalty. The Debtor contends that, although the original transaction is free from any defense of usury, the subsequent actions of Northwestern entitle the Debtor to invoke the statutory protection of Mich.Stat.Ann. § 19.15(2) [438.32].

The remedial effect of the Michigan usury statutes does not reach this far. Once a transaction is excepted from the general usury prohibition of Mich.Stat.Ann. § 19.-15(1) [438.31], it cannot be brought back, under the penalty provision, by a lender later charging excessive interest. Once lost, the non-vested right to defend against payment based on the Michigan usury statutes cannot be asserted. Northwestern is correct in arguing that the remedy found in Mich.Stat.Ann. § 19.15(2) [438.32] is not applicable to this proceeding. The Debtor may have a cause of action for breach of contract and the Debtor definitely possesses the right to have the claim of Northwestern adjusted for any overpayment or unrecorded payments made[8], but the defense of usury is unavailable, precluded by the statutory exceptions.

Mich.Stat.Ann. § 21.200(275) [450.1275] states that the defense of usury is prohibited for a corporation. This exception is broad and deserving of liberal application. Before being amended by Pub.Acts No. 121 (1989), the corporate exception to the usury statute stated, in part, "and in such case the defense of usury is prohibited." Mich. Stat.Ann. § 21.200(275) [450.1275] (1982). The language, "in such case", referred presumably to the agreement in writing to pay any rate of interest. In the current version of this statute "in such case" has been deleted and the final part of the corporate exception states only that "the defense of usury shall be prohibited." With this change in language, the exception more strongly dictates that corporations should be free to enter into financial transactions at any rate of interest. The deletion of "in such case" from the statutory corporate exception bolsters the conclusion that the defense of usury should be easily lost by a corporation, and once avoided in writing not again asserted, even when interest is charged in excess of what was called for in the written agreement.

The purpose of the Michigan usury statute is to protect the necessitous borrower, the individual unexperienced in financial transactions and subject, perhaps, to the superior bargaining power of a lender. A corporation entering into a transaction for clearly financial and business reasons merits no such protection. The final clause of the corporate exception specifically states that, "the defense of usury shall be prohibited." The defense of usury cannot be resurrected for the benefit of a corporation by subsequent action under a non-usurious written obligation.

Michigan cases, early on, concurred in the conclusion that the defense of usury is prohibited for a corporation entering into a written agreement with a lender. In *Thomas v. Union Trust Co.* 251 Mich. 279, 231 N.W. 619 (1930), the Michigan Supreme Court upheld the constitutionality of the corporate exception deciding that the policy behind the prohibition of charging usurious interest does not extend to corporate entities. *Id.* at 282–84, 231 N.W. 619. *See also, Grinnell Realty Co. v. General Casualty & Surety Co.,* 253 Mich. 16, 234 N.W. 125 (1931) (concurring that a corporation cannot raise the defense of usury).

More recently, decisions of the Michigan Court of Appeals deny the benefit of Michigan's usury statutes to corporations agree-

---

**8.** Northwestern has already conceded to making all necessary mathematical adjustments to its proof of claim in their response titled *North-* *western's Response to Debtor's Supplemental Brief* and filed on December 13, 1991.

864

ing to a loan in writing. The cases use broad, general language in their denial of the defense of usury. In the case, *Bob v. Holmes*, 78 Mich.App. 205, 259 N.W.2d 427 (1977), the Michigan Court of Appeals concludes that as a result of signing various leases as a corporation, the defendants are "consequently precluded from asserting the defense of usury." *Id.* at 217, 259 N.W.2d 427. The Court comments, in remanding the case to the trial court, that the effect of the corporate exception is to "effectively repeal the usury statutes insofar as corporations are concerned." *Id.* at 217, 259 N.W.2d 427.[9] While not dealing specifically with the Debtor's contention that subsequent action can again implicate the defense of usury, the broad language that the Court of Appeals uses in speaking about the nature of the corporate exception goes against the Debtor's attempt to limit the application of MICH.STAT.ANN. § 21.-200(275) [450.1275].

The Michigan Court of Appeals in *Allan v. M & S Mortgage* recognized that, when found to apply, MICH.STAT.ANN. § 21.-200(275) [450.1275] prevents borrowers from maintaining any defense based upon the charge of usurious interest. *Allan v. M & S Mortgage Co.*, 138 Mich.App. at 39, 359 N.W.2d 238. In *Allan v. M & S Mortgage Co.*, the Court dealt with the issue, not involved here, of whether a lender can avoid the usury provisions of Michigan law by forcing a borrower to incorporate. The Court decided that, under the corporate exception, the defense of usury is not available to an individual who incorporates for the purpose of borrowing to further business purposes, but can be invoked by an individual who incorporates to borrow to discharge personal obligations. *Id.* at 40, 359 N.W.2d 238. The purpose of the usury statutes only goes to protect this latter type of lending situation. *Id.* at 38, 359 N.W.2d 238.

Even without the corporate exception barring the defense of usury, MICH.STAT. ANN. § 19.15(1c)(2) [438.31c(2)] would again compel the decision that the Debtor is precluded from objecting to the claim of Northwestern based upon the charge of excessive interest. The subsequent charging of interest greater than what was called for in the written agreement does not revive the defense of usury. The loan transaction, by falling under an exception to the usury prohibition, is removed from its operation. Since the defense of usury is not a vested right, once it is lost it cannot again be asserted.

The three arguments raised by the Debtor to support its defense of usury hold no value. The Debtor is precluded from raising them. The excessive amount alleged in Northwestern's proof of claim, does not amount to the charging of usurious interest. It does reflect a mathematical error on the part of Northwestern deserving of correction. Since the parties have stipulated to the amount of the secured claim absent a showing of usury, this error has been corrected.

Northwestern's purported charge of three additional dollars in loan costs also fails to constitute the charge of usurious interest. The additional charge may be beyond what was called for in the loan agreement and hence in violation of the written agreement, but it is not usury. Once again, a mistake of fact has occurred deserving of correction but not of the prohibition of the collection of interest.

Finally, the issue most extensively argued was whether the computing of interest based upon a 360 day rather than a 365 day year could amount to usury. The parties engaged in needless haggling over the date upon which the computation of interest must be considered. The proper definition of per annum in the note is a question of contract interpretation, not usury.

In support of its argument, the Debtor cited the case, *American Timber & Trading Co. v. First National Bank of Oregon*,

9. The corporate exception in effect at the time *Bob v. Holmes* was decided was substantially similar to the one before the Court in this proceeding. In fact, the way in which it was changed by later revision strengthened its preclusive effect upon the objection raised by the Debtor. This difference in language is discussed later in the Opinion.

511 F.2d 980 (9th Cir.1974), *cert. denied*, 421 U.S. 921, 95 S.Ct. 1588, 43 L.Ed.2d 789 (1975). The Ninth Circuit concluded that computing interest on a 360 day year rather than a 365 day year could result in the charging of usurious interest. But the conclusion reached by the Ninth Circuit does not apply to the facts that are before me. To begin with, the Ninth Circuit was considering Oregon law, but the defense of usury was based on federal law found in 12 U.S.C. §§ 85, 86. Also, no consideration was given to a corporate exception or an exception existing for loans secured by a first lien on real property. The one possible exception dealt with in *American Timber* was not given effect because it was enacted subsequent to the lawsuit and the Ninth Circuit concluded that Oregon law did not allow for retroactive application. *Id.* at 984.

Given the broad exceptions to the usury prohibition found in Michigan law, I now conclude that this final contention raised by the Debtor does not sustain a defense of usury but rather serves to implicate an issue of contract construction.

Finally, the Debtor has strenuously argued issues such as whether Northwestern's intent is relevant and whether de minimis charges can be excused in considering the defense of usury. These contentions need not be addressed since the Debtor is prevented from interposing the defense of usury. When an exception exists to Michigan's prohibition against excessive interest, the defense of usury is lost and cannot be revived. Such an exception bars the defense of usury in the face of a flagrantly usurious document or when a lender has proceeded to exact usurious interest.

CONCLUSION

The Debtor's request for reconsideration is granted. But, Debtor's objection to the secured claim of Northwestern based on the defense of usury raised by the Debtor is denied. The Debtor is precluded under the operation of Michigan law from raising the defense of usury. Based on Michigan's broad statutory exceptions and the legal conclusion that the defense of usury is not a vested right, Northwestern's right to

payment should not be modified. The secured claim possessed by Northwestern will be allowed at the stipulated value of $386,488.72 (plus post-confirmation interest).